**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DISTRICT**

**JOHNNY BANKS**                                                                               **PLAINTIFF**

**VS.**                                    **CASE NO. 4:18CV00259 BSM**

**SHELBY HAWKINS, in his individual capacity,**
**et al.**                                                                               **DEFENDANTS**

**BRIEF IN SUPPORT OF CITY DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

COME now Defendants, the City of Shannon Hills, Arkansas (hereinafter, "the City") and

Officer Shelby Hawkins (hereinafter, "Ofc. Hawkins") in his individual capacity, by and through

their counsel, Sara Monaghan, and for their Brief in Support of their Motion for Summary

Judgment, state:

**I.      INTRODUCTION**

Plaintiff, Johnny Banks (hereinafter, "Mr. Banks"), brings claims pursuant to 42 U.S.C. §

1983 claiming Defendants violated his rights under the Fourth and Fourteenth Amendments of the

United States Constitution. More Specifically, Mr. Banks alleges Defendants violated his right to

be from excessive and unreasonable force and his right to equal protection of the laws. Mr. Banks

alleges that the City is liable for the alleged constitutional violations because an unconstitutional

City policy, practice, or custom caused the violation. Mr. Banks further claims that a failure on the

part of the City to adequately train and supervise Ofc. Hawkins caused his injury, and that the City

acted negligently in the hiring of Ofc. Hawkins. Finally, Mr. Banks brings a ratification claim

against the City, alleging the City tacitly ratified the conduct of Ofc. Hawkins by not punishing

him. As demonstrated fully throughout this brief, the City and Ofc. Hawkins are entitled to

summary judgment on Mr. Banks' claim against the City and Ofc. Hawkins.

## II.     STATEMENT OF FACTS

The undisputed material facts are set out in the Defendants' Statement of Undisputed Material Facts (SUMF) filed simultaneous herewith.

## III.    SUMMARY JUDGMENT STANDARD

A court should grant summary judgment if "there is no genuine issue of material fact" and "the moving party is entitled to judgment as a matter of law." *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997) (citing Fed. R. Civ. P. 56(c)). The burden is on the movant to establish the absence of a material fact issue by referring to portions of the pleadings, affidavits, depositions, admissions on file, and answers to interrogatories. *Hinkel*, 121 F.3d at 366. The moving party meets it burden merely by "pointing out" to the district court that there is "an absence of evidence to support the nonmoving party's case." *Celotex corp. v Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show that there is a genuine issue to be determined at trial. *Hinkel*, 121 F.3d at 366. In ruling on a summary judgment motion, a court views the facts as most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from the evidence. *Id.*

In order to establish that a genuine issue of material fact exists, the nonmoving party must show that (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party. *RSBI Aero., Inc. v. Affil. FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005) (citing *Celotex*, 477 U.S. at 331). "[S]ummary judgment procedure is properly regarded not as a disfavored shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed to secure the just, speedy, and inexpensive determination of every action." *Emp'rs Mut. Cas. Co. v. Wendland & Utz, Ltd.*, 351 F.3d 890, 893 (8th Cir. 2003) (quoting *Celotex*, 477 U.S. at 327).

### IV.   ARGUMENT

#### A.   The Use of Force Employed by Ofc. Hawkins Was Objectively Reasonable; Ofc. Hawkins Is Entitled to Summary Judgment on Mr. Banks' Excessive Force Claim Brought Pursuant to the Fourth Amendment.

Given the totality of the circumstances in this case, Ofc. Hawkins did not violate Mr. Banks' Fourth Amendment right to be free from excessive and unreasonable force by shooting Mr. Banks in the upper thigh area when he believed he was under attack by Mr. Banks, and that Mr. Banks may overtake his firearm. In determining whether an officer's shooting amounts to a Fourth Amendment violation, the United States Court of Appeals for the Eighth Circuit established the "objectively reasonable standard." *Estate of Morgan v. Cook*, 686 F.3d 494, 496 (8th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 368, 394 (1989)). Under the objectively reasonable standard, an officer's use of force is evaluated by looking at the totality of circumstances. *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) (citing *Graham*, 490 U.S. at 394). An officer's conduct does not amount to excessive force if an objectively reasonable officer, in the same shoes as the officer executing the force, would have used the same amount of force. *Graham*, 490 U.S. at 388. The reasonableness is determined "without regard to [the officer's] subjective intent or motivation." *Estate of Morgan*, 686 F.3d at 496 (citing *Nance v. Sammis*, 583 F.3d 604, 610 (8th Cir. 2009)).

In analyzing the totality of the circumstances, the Court in *Graham v. Connor* listed three relevant factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the officer or others; and (3) whether the suspect is actively resisting arrest or attempting

to evade by flight.  490 U.S. at 396; *see also Estate of Morgan*, 686 F.3d at 496. The use of deadly force is not constitutionally unreasonable if an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others. *Estate of Morgan*, 686 F.3d at 496.  But where a person poses no immediate threat to the officer and no threat to others, deadly force is not justified. *Id.*

It is well settled that the reasonableness standard and use of force is judged from "the perspective [and vantage point] of the officer on the scene, taking into consideration the facts known to him, as opposed to one possessing the illuminating power of hindsight." *Bilingsely v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002); *see also Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008).  "[P]olice officers are often forced to make split-second decisions—in circumstances that are [chaotic], tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Church v. Anderson*, 898 F.3d 830,  833 (8th Cir. Cir. 2018). Under this standard, it matters not whether alternative options were available to police at the time the force used was executed; the only relevant question is whether the force used is objectively reasonable. If this standard for reasonableness is shown to have been met, the officers involved in the use of said force will be entitled to summary judgment as a matter of law.

Mr. Banks alleges that Oc. Hawkins acted intentionally and with some sort of animus. *Amend. Comp.* ¶¶ 57, 65. The Supreme Court, however, has made it clear that "an action is 'reasonable' under the Fourth Amendment regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify the action.'" *Brigham City v. Stuart*, 547 U.S. 3, 404 (2006) (holding that an officer's primary motivation of arresting or seizing evidence is subjective, and irrelevant) (citing *Scott v. United States*, 436 U.S. 128, 138 (1978)).  As such, the allegations that Ofc. Hawkins acted intentionally or with animus is subjective, irrelevant, and

not be taken into consideration.  *Id.* Therefore, Ofc. Hawkins' conduct is objectively reasonable and does not amount to excessive force.

Ofc. Hawkins' use of force was objectively reasonable given the totality of the circumstances surrounding the incident – a non-responsive 911 call, screams coming from the home, failure of a resident to answer the door after Ofc. Hawkins knocked and announced himself, two failed attempts to forcefully enter the home, Mr. Banks forcefully opening the door with his hand raised while stating, "Who the fuck is this," Ofc. Hawkins being struck in the head and becoming disoriented, and ultimately fearing that Mr. Banks would overtake his firearm.  Given Ofc. Hawkins' disorientation and all of the surrounding circumstances faced by Of. Hawkins, Ofc. Hawkins had probable cause to believe that Mr. Banks posed a threat of serious physical harm to himself, Ms. Banks, and others.  *Estate of Morgan,* 686 F.3d at 496.  Accordingly, Ofc. Hawkins' use of force in discharging his firearm and shooting Ms. Banks in the upper thigh was objectively reasonable and did not violate the Fourth Amendment.

### 1.  The Graham Factors Weigh Heavily in Ofc. Hawkins' Favor.

Based on the factors established in *Graham*, an officer in the same shoes as Ofc. Hawkins and under the same facts and circumstances, would have believed that his life, Ms. Banks' life, and the lives of others were in imminent danger and acted accordingly. The first *Graham* factor, the severity of the crime, weighs heavily in favor of Ofc. Hawkins. Ofc. Hawkins was dispatched to a possible *domestic disturbance*, where the caller had made an open-line call and the call was disconnected. **SUMF ¶¶ 13–22.**  As Ofc. Hawkins approached the residence and heard multiple muffled screams he attempted to make contact with the residents by knocking and announcing his presence, but his knocks went unheeded. **SUMF ¶ 42.**  Based on the circumstances, and as the muffled screams progressed, a reasonable officer in Ofc. Hawkins' shoes would believe the woman

inside the residence was in imminent danger, possibly being "smothered or choked", and a domestic disturbance was in progress. **SUMF ¶ 40.** Considering those facts, coupled with the 911 hang-up and the veered truck parked in the driveway with its emergency lights on, Ofc. Hawkins had probable cause to believe that a violent domestic battery or assault was in progress, and that a woman's life was in imminent danger. **SUMF ¶ 18.**  As such, the severity of the crime excelled. Ofc. Hawkins waited for backup as long as he could—but reasonably concluded that he needed to make forced entry into the residence. **SUMF ¶¶ 44–45.**[1]

As Ofc. Hawkins attempted to make forced entry by kicking the door three to five times, (but before he could make ***actual*** entry), Mr. Banks forcefully opened the door to the residence with his arm raised in the air and stated "who the fuck is this;" Ofc. Hawkins was then immediately struck in the head. **SUMF ¶¶ 45–71.** The strike to the head, which resulted in visible injury to Hawkins' forehead and a concussion diagnosis, disoriented Ofc. Hawkins, who was then unable to identify who or what struck him in the head. **SUMF ¶¶ 62–68, 88–92.** Mr. Banks was within arm's reach of Ofc. Hawkins, and in front of Ofc. Hawkins at all times, and from Ofc. Hawkins' perspective, was in an aggressive posture. **SUMF ¶¶ 59–60, 65–68.** Given the totality of the circumstances—Ofc. Hawkins' disoriented state, coupled with his visual perception of Mr. Banks' aggressive actions and posture, an objectively reasonable officer in the shoes of Ofc. Hawkins would believe that Mr. Banks had struck him. **SUMF ¶¶ 59–68.**  At that point, the "severity of the crime" factor was escalated even further. In addition, the second and third factors, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight were indisputably met.

---

[1] Mr. Banks does not assert an unlawful warrantless entry occurred, but the application of the emergency aid exception is needed to put the severity of the issue at hand in context. *See, e.g.*, *Stuart*, 547 U.S. at 403 (holding that it is objectively reasonable for an officer to make a warrantless entry into a residence to "render emergency assistance to an injured occupant or to protect an occupant from imminent injury").

It is undisputed in this case that when Mr. Banks forcefully opened the front door with his hand raised in the air while stating loudly, "who the fuck is this," Ofc. Hawkins was instantaneously struck in the head. While Ofc. Hawkins could not identify who or what struck him in the head, under these facts and circumstances, *a reasonable officer in the shoes of Ofc. Hawkins'* could conclude that Mr. Banks, who was in front of Ofc. Hawkins at all times and stood in an aggressive position, had struck him in the head. **SUMF ¶¶ 52, 59–68.** The State Police did determine that even if Mr. Banks was not the origin of the strike to Ofc. Hawkins' head, Ofc. Hawkins most certainly could have been struck in the head by a 2'2" wide x 2' tall metal sign hanging on the Banks' door. **SUMF ¶ 93–95.** Regardless of the actual cause of Ofc. Hawkins' head injuries, a reasonable officer in Ofc. Hawkins' shoes could conclude from these circumstances that Mr. Banks had struck him in the head. The fact that Ofc. Hawkins could reasonably believe that Mr. Banks had struck him, was disoriented, and reasonably believed that he was about to lose consciousness and control of his firearm further supported his basis for probable cause to believe that himself, Ms. Banks, and others were in imminent danger of serious physical harm. **SUMF ¶¶ 69–73, 88–92.** From the perspective of Officer Hawkins, Mr. Banks posed an immediate threat, and Ofc. Hawkins reasonably responded by shooting Mr. Banks one time, from the low ready position, with his firearm already drawn. Given all of the facts above, Ofc. Hawkins' use of deadly force was objectively reasonable and he is entitled to summary judgment. **SUMF ¶¶ 71–72.**

As noted above, the use of deadly force is not constitutionally unreasonable if an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others. *Estate of Morgan*, 686 F.3d at 496. Given all of the undisputed facts set out immediately above, the *Graham* factors weigh heavily in favor of Ofc. Hawkins, and the force

used by Ofc. Hawkins at every point during the incident is objectively reasonable.  Ofc. Hawkins

is entitled to summary judgment.

### 2. Ofc. Hawkins was not required to grapple with Mr. Banks; his use of force in firing his weapon at Mr. Banks was objectively reasonable.

The Eighth Circuit has not addressed a factually similar case or answered the question of

whether a reasonable officer, that is disoriented and/or concussed from having been struck in the

head, is required to grapple with a suspect who the officer believes is taking an aggressive posture

and who is so close that the suspect could assault the officer and seize the officer's gun. The United

States Court of Appeals for the Third Circuit, however, offers an informative and persuasive

analysis of a similar issue in *Carswell v. Borough of Homestead*. 381 F.3d 235, 243 (3d Cir. 2004)

(answering the question by applying both the split-second decision (*i.e.* no 20/20 hindsight) and

mistaken belief theories to the case; both recognized in the Eighth Circuit). In *Carswell*, the Third

Circuit held that an officer is not required or expected to grapple with an unarmed suspect that is

approaching the officer in a threatening manner and is so close that the suspect could assault the

officer and seize the officer's gun (thus, arming the suspect). *Id.* at 244 (holding that an officer

acted reasonably by shooting and killing the unarmed suspect with a single gunshot that charged

at the officer).

In *Carswell*, officers responded to multiple complaints of domestic discord between Gilbert

Carswell ("Mr. Carswell") and his wife. 381 F.3d at 237. On the night in question, officers

responded to the residence of the Carswells four times in lieu of Mr. Carswell's behavior—but

officers were not able to capture Mr. Carswell. *Id.* at 238. Two officers cornered Mr. Carswell on

a neighbor's porch but he jumped the porch and escaped. *Id.* The third officer cornered Mr.

Carswell with his patrol car and, from twenty to thirty feet away, Mr. Carswell began running

toward the officer. *Id.* The officer exited his patrol car and pointed his firearm at Mr. Carswell and instructed him to stop. *Id.* As Mr. Carswell approached, the officer could see that Mr. Carswell's hands were empty. *Id.* The officer shot and killed Mr. Carswell when his chest was approximately twenty-four to thirty-six inches away from his service pistol and when his hands were twelve to twenty-four inches away from the muzzle of the service pistol. *Id.* The officer shot and killed Mr. Carswell while he was running at the officer, unarmed, in a threatening manner. The court held that the officer's actions were reasonable, and, at most, were a reasonable mistake. *Id.* at 244.

The Third Circuit's holding in Carswell rested on the principal that an officer's split-second decision-making process cannot be viewed through the "calm, thoughtful deliberation process typical of an academic setting," also referred to as 20/20 hindsight. *Id.* The Court held that the officer's conduct in shooting the suspect in this situation instead of grappling with him or her was objectively reasonable, and at most a reasonable mistake under the circumstances. *Id.*

The Eighth Circuit recognizes the two theories justifying the Third Circuit's decision—the inapplicability of 20/20 hindsight and the mistaken fact. *Bilingsely*, 277 F.3d at 993 (no hindsight); *Loch v. City of Litchfield*, 689 F.3d 961 (8th Cir. 2012) (mistake). First, the Eighth Circuit has made it clear that the reasonableness must be determined from the point of view of a reasonable officer in the situation, "rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 398. And second, the Eighth Circuit has recognized that "[a]n act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment." *Loch*, 689 F.3d at 961 (holding that it is not unreasonable for an officer to shoot an unarmed suspect based on a mistaken perception if found to be objectively reasonable; "Even if a suspect is ultimately 'found to be unarmed, a police officer can still employ deadly force if objectively reasonable.'").

A closer look at the facts in *Loch* will assist in demonstrating the mistaken perception theory upon which the Third Circuit in *Carswell* based its holding.  In *Loch*, Cassidy Loch ("Mr. Loch") was shot eight times by an officer who was responding to a reported drunk driving. 689 F.3d at 961. Mr. Loch was intoxicated and attempted to leave his house. *Id.* at 963. His wife, brother-in-law, and mother-in law attempted to block Mr. Loch's car in the driveway with their car. *Id.* 963-64. Mr. Loch rammed the car, drove into the yard, and got stuck. *Id.* at 964. Mr. Loch's mother-in-law called the police and reported a drunk driver.  *Id.* Mr. Loch and his brother-in-law began arguing, going "nose-to-nose," and Mr. Loch pulled out a pistol and pointed it at himself. *Id.* His brother-in-law attempted to take the pistol away from Mr. Loch. *Id.* As the officer arrived, everything happened quickly—twenty to thirty seconds. *Id.* at 967. The brother-in-law informed the officer that Mr. Loch had a gun. *Id.* at 964. Mr. Loch threw the pistol in the snow, without the officer seeing him throw the gun. *Id.* The officer instructed everyone to stop and to get on the ground—Mr. Loch threw up his hand, shifted towards the officer, slipped on a snowbank and moved his hands towards his side—the officer fired eight times. *Id.* at 964-65. The court held that the officer's use of deadly force was reasonable, even though Mr. Loch was unarmed; based on the tense and changing situation, and a mistake of perception by the officer. *Id.* at 966-67.

*Loch* demonstrates that Ofc. Hawkins' use of force in deploying his firearm was objectively reasonable even if Ofc. Hawkins's perception of the incident was a mistake, as long as it was reasonable.  Further, based on *Carswell*, an objectively reasonable officer in Officer Hawkins' position could conclude that his firearm was about to be overtaken and his life and safety and the safety and lives of the other parties were in danger.  Both Ofc. Hawkins and Mr. Banks stated that the incident occurred very quickly—Ofc. Hawkins based his split-second decision on multiple factors surrounding the circumstances that caused him to believe that "his life and safety and the

safety and lives of the other parties were in danger." **SUMF ¶ 72.** The facts and circumstances included: Ofc. Hawkins was responding to a dispatched domestic violence call in which the complainant could not be contacted; Ofc. Hawkins noted a vehicle with the flashers on outside the residence; Ofc. Hawkins heard yelling from within the residence; Ofc. Hawkins was by himself at nighttime; Ofc. Hawkins noted no response to his knock and announcement; Ofc. Hawkins noted the door suddenly opened with what he perceived [and Mr. Banks admits standing while leaning forward with his arm raised] to be a suspect in an aggressive stance with his arm raised; and Ofc. Hawkins felt a strike to his head that disoriented him in a manner that led him to believe he may lose consciousness. Based on these facts and circumstances, Ofc. Hawkins' action in shooting Mr. Banks in the upper thigh from the low ready position was objectively reasonable under these circumstances.

If there is a question of whether Ofc. Hawkins' choice of shooting Mr. Banks instead of grappling with him, is not objectively reasonable—then at most his use of deadly force was an objectively reasonable mistake. Ofc. Hawkins' mistake of perception would be objectively reasonable given the facts and circumstances surrounding the incident set out immediately above. These facts, coupled with the facts set out in this brief, demonstrate that Ofc. Hawkins' choice of shooting Mr. Banks was at most was a reasonable mistake. As such, following the informative decision of *Carswell* and the Eighth Circuit's precedent, Ofc. Hawkins' use of deadly force was at most a reasonable mistake and summary judgement should be granted on Mr. Banks' excessive force claim.

> **3. Ofc. Hawkins had an objectively reasonable belief that that he could potentially lose control of his firearm to the Mr. Banks thus arming the suspect, and applying deadly force under such circumstances is consistent with generally accepted police policies, practices, and training.**

Ofc. Hawkins had an objectively reasonable belief that he could potentially lose control of his weapon to Mr. Banks, thus arming the suspect, and his response to said belief by employing deadly force is consistent with generally accepted law enforcement practices and training. Ofc. Hawkins objective belief that Mr. Banks would disarm him and cause injury is supported by statistical evidence.   In 2018, 7.7% of law enforcement officers were disarmed and fatally shot with their own duty weapons.[2] Further, a ten-year study by the International Association of Chiefs of Police statistically shows that "police officers killed feloniously . . . reveal that about fifteen percent of police homicides were perpetrated by assailants using the officer's own handguns." **SUMF ¶ 106.**   The alarming statics that 7.7% of officers in 2018 and 15% of officers in the last decade were disarmed and shot and killed with their own weapons statistically furthers the notion that Ofc. Hawkins had probable cause to believe he was in imminent danger of being disarmed, and potentially shot and killed by Mr. Banks.

In addition to these statistics, the Defendants have presented undisputed expert testimony by Jack Ryan which demonstrates Ofc. Hawkins' conduct in deploying his firearm in this situation was consistent with accepted law enforcement training, policies, and practices, which lends further support for a finding that Ofc. Hawkins' use of force in this situation was objectively reasonable. With respect to this training Mr. Ryan states, "Officers throughout the United States are trained with respect to the danger of going hands on with a violent subject" but "it is recognized that close-quarter, hands on conduct with a violent and[d] unpredictable subject brings the officer's weapon within the reach of the subject and increases the level of danger to anyone in the area of the event."

---

[2] Steve Groeninger, *144 Law Enforcement Officer Fatalities Nationwide in 2018*, NAT. L. ENFORCEMENT OFFICERS MEMORIAL FUND, https://nleomf.org/newsroom/news-releases/144-law-enforcement-officer-fatalities-nationwide-in-2018 (last visited May 28, 2019) ("Handguns were the leading type of firearms used against law enforcement in 2018. Of the 52 officer fatalities, 31 officers were shot and killed with a handgun; four officers were disarmed and shot with their own duty weapons.").

**SUMF ¶ 107.** Furthermore, according to Ryan, "[o]fficers are also aware that a single officer is subject to an even greater threat due to the lack of assistance by other officers." **SUMF ¶ 108.**

In his expert report, Mr. Ryan further opined, Ofc. Hawkins' perception of Mr. Banks in an aggressive stance, with his hand raised above his head, and yelling "who the fuck is it;" coupled with the fact that he had no backup, had been struck in the head, was disoriented and feared that he may lose conscientiousness—would lead a reasonable officer in the shoes of Ofc. Hawkins to believe that Mr. Banks was an imminent threat to Ofc. Hawkins and the control of his firearm, Mrs. Banks, and others. **SUMF ¶ 104–105.** Ryan went on to state, "All officers are trained that when faced with this type of threat where the subject will have access to the weapon of an officer who is incapacitated, the officer's use of deadly force is consistent with generally accepted polices . . ." on the use of force, and "Any reasonable and well trained officer, based on common law enforcement training, confronted with this set of circumstances, would reasonably perceive that he or she was facing a[n] immediate threat of serious bodily harm or death and that anyone else in the area, including the domestic violence victim was facing a similar threat and that a use of deadly force would be consistent with generally accepted law enforcement policy, practice, training, and legal mandates trained to officers for application in field operations." **SUMF ¶ 104 & 109.**

Ofc. Hawkins was not required to go hands on with Mr. Banks. *See, Carswell.* An objectively reasonable officer in Ofc. Hawkins' position would have perceived that Mr. Banks was violent and unpredictable and the fact that Ofc. Hawkins and Mr. Banks were "within arm's reach of each other" would increase the exposure of Ofc. Hawkins' firearm to the suspect and increase the danger to the officer and others in close proximity. **SUMF ¶ 109.** Thus, Ofc. Hawkins' belief that he had probable cause to believe that his life, and the life of Mrs. Banks and others, were in an imminent threat of danger was consistent with generally excepted law enforcement training,

practices, and policies on use of force, and Ofc. Hawkins' use deadly force was objectively reasonable.

### 4. Ofc. Hawkins was not required to use less-lethal force options.

Ofc. Hawkins' was not required to use less-lethal weapons, such as a baton or taser, and his choice to use deadly force instead of a less-lethal option is objectively reasonable given the facts and circumstances. If "an officer is confronted with an immediate threat of serious bodily harm or death [then] the trained response is the use of deadly force to stop the threat." **SUMF ¶ 110.** Other options, such as a baton or taser, "while of course reasonable, are discouraged due to the fact that if such less-lethal options are unsuccessful, the officer will be unable to transition to [the use of] deadly force before the threat is carried out by the subject." **SUMF ¶ 111.** Under the undisputed material facts, Ofc. Hawkins was by himself at the Banks residence without backup present, and the escalating domestic disturbance required Ofc. Hawkins to act quickly and before backup arrived. **SUMF ¶¶ 44–45, 112.** Ofc. Hawkins reasonably believed that Mr. Banks was an immediate threat of serious bodily harm or death to himself, Ms. Banks, and others, and the use of deadly force was objectively reasonable. The use of a less-lethal option, such as a taser or baton would not be objectively reasonable given the circumstances and the fact that Ofc. Hawkins did not have lethal-cover or any form of backup present during the encounter. As such, Ofc. Hawkins' use of deadly force instead of a less-lethal option was objectively reasonable. **SUMF ¶ 112.**

### B. Mr. Banks' Claim Under the Equal Protection Clause Fails Because He Cannot Show a Discriminatory Effect or Purpose.

Mr. Banks' equal protection claim that racial animus allegedly motivated Ofc. Hawkins' actions fails and Defendants are entitled to summary judgement. "In general, the Equal Protection Clause requires that state actors treat similarly situated people alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *McDonald v. City of Saint Paul*, 679 F.3d 698, 705 (8th

Cir. 2012). "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause." *Habhab v. Hon*, 536 F.3d 963, 967 (8th Cir. 2008) (quoting *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000)).

In order for Mr. Banks to survive summary judgment on his equal protection claim, Mr. Babnks must prove an officer enforced a law on account of his or her race—requiring proof that the officer's conduct had a discriminatory effect and a discriminatory purpose. *Johnson v. Crooks*, 326 F.3d 995, 999−1000 (8th Cir. 2003) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). *Id.* (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 634−48 (7th Cir. 2011)). An officer is "merely prohibited from his pursuit if he acts *solely* on race." *United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005) (emphasis added) (quoting *Johnson*, 326 F.3d at 1000). But, "[p]roving discriminatory purpose is no simple task" and the Court "need not accept unreasonable inferences or sheer speculation of facts." *Gilani v. Mathews*, 843 F.3d 342, 350 (8th Cir. 2016) (quoting *Villanueva v. City of Scottsbluff*, 779 F.3d 501, 511 (8th Cir. 2015).

First, Ofc. Hawkins did not personally choose to pursue the Banks' residence. Ofc. Hawkins was dispatched and ordered to respond to a possible domestic violence at the residence where he had no knowledge of the race of the individual he was responding to, including the caller and the assailant. **SUMF ¶ 24.** Furthermore, Mr. Banks cannot offer any evidence to prove a discriminatory effect and purpose—or any evidence of similarly situated individuals or that Ofc. Hawkins acted *solely* based on race. *Frazier*, 408 F.3d at 1108 (emphasis added). Said simply, Mr. Banks cannot identify "affirmative evidence from which a jury could find that Mr. Banks carried his or her burden of proving pertinent [effect and] motive." *Id.* (quoting *Johnson*, 326 F.3d at 1000); *see also Gilani*, 843 F.3d at 350. Thus, Mr. Banks' equal protection claim fails and Defendants are entitled to summary judgment.

C.    **Officer Hawkins Is Entitled to Qualified Immunity on Mr. Banks'
Excessive Force Claim Against Ofc. Hawkins In His Individual
Capacity; Ofc. Hawkins is Entitled to Qualified Immunity on Mr.
Banks' Equal Protection Claims.**

Mr. Banks alleges that Ofc. Hawkins is individually liable for violating Mr. Banks'
constitutional rights which were clearly established on February 17, 2017. *Amend. Comp*. ¶ 60.
Individual capacity liability under § 1983 is personal, and each Defendants' conduct must be
independently assessed. *See Mayora v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006; *Madewell
v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). As demonstrated above, the undisputed material
facts do not demonstrate the existence of any constitutional violation by Ofc. Hawkins.
Alternatively, any alleged violation was not of a clearly established right. Therefore, Ofc. Hawkins
is entitled to qualified immunity and judgment as a matter of law.

The doctrine of qualified immunity shields officials from liability "unless the official's
conduct violates a clearly established constitutional or statutory right of which a reasonable person
would have known." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011). When ruling on
qualified immunity, a court must first consider whether, taken in the light most favorable to the
Mr. Banks, the facts show a violation of a particular constitutional right. *Saucier v. Katz*, 533 U.S.
194, 200 (2001). If the court finds no constitutional violation occurred, then the official is entitled
to qualified immunity; however, if the facts as construed could make out a violation, then a second
inquiry is required. *Id.* The second inquiry requires determining whether the right is clearly
established. *Id.*

The Supreme Court emphasized that the second inquiry "must be taken in light of the
specific context of the case, not a broad general proposition." *Brosseau v. Haugen*, 125 S. Ct. 596,
599 (2004). A right is clearly established only if "existing precedent [has] placed the statutory or
constitutional question <u>beyond debate</u>." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (emphasis

added). "The clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 645, 540 (1987). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* at 552 (quoting *Aschroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (emphasis added). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 476 U.S. 335, 441 (1986)).

1.    **Officer Hawkins is Entitled to Qualified Immunity on Mr. Banks' Excessive Force Claim Against Ofc. Hawkins In His Individual Capacity.**

As discussed in great detail above, the Eighth Circuit has not answered the question of whether a reasonable officer under the circumstances particularized to this case is required to grapple with an unarmed man who the officer perceives to be taking an aggressive posture and is so close that the suspect could assault the officer and seize the officer's gun. But the Third Circuit has held that an officer is *not* required or expected to grapple with an unarmed suspect that is fleeing or approaching the officer in a threatening manner and is so close that the suspect could assault the officer and seize the officer's gun.  *Carswell*, 381 F.3d at 244 (emphasis added). The Third Circuit's holding further stated that, at most, the officer's choice to shoot the suspect instead of grapple with him or her was a reasonable mistake. *Id.* The Eighth Circuit recognizes both justifying theories behind the Third Circuit's decision—20/20 hindsight and mistake of perception.

Qualified immunity is applied to officers in situations involving the "hazy border between excessive and acceptable force." *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001). The Eighth Circuit has held that if an officer makes a "mistake as to the true nature of the situation at hand" then it is a "hazy border" situation and qualified immunity applies. *Wertish v. Kruger*, 433 F.3d 1062 (8th Cir. 2006) (citing *McGruder v. Heagwood*, 197 D.3d 918, 920 (8th Cir. 1999) (holding that the

17

officers acted reasonably in apprehending a suspect by pulling him out of a car when the officer mistakenly believed the subject to be a flight risk)).

Given the facts and circumstances of the case at hand, at most, Ofc. Hawkins' actions were a mistake of perception—that he had likely been struck in the head by a violent man in an aggressive posture, that he was about to lose consciousness and control of his firearm, and that his life, Ms. Banks life, and the lives of others were in imminent danger. Thus, the mistake involves the hazy border between acceptable and excessive force necessitating Ofc. Hawkins' entitlement to qualified immunity. *See, e.g.*, *Sauier*, 533 U.S. at 205.

Furthermore, "[t]he doctrine of qualified immunity requires an exercise of judicial restraint that sometimes can be discomforting. Even when a court believes that a defendant violated the constitutional rights of plaintiff, the court is required to dismiss the plaintiff's claim if the unconstitutionality of the defendant's conduct was not clearly established." *Atkinson v. City of Mt. View*, 709 F.3d 1201, 1219-20 (8th Cir. 2013). As such, even if this Court believes Ofc. Hawkins violated Mr. Banks' Fourth Amendment right, Ofc. Hawkins' actions were not clearly established as a violation of Mr. Banks' constitutional rights on February 7, 2017, and Ofc. Hawkins is entitled to qualified immunity and summary judgement should be granted on Mr. Banks' excessive force claims.

> **2.    Officer Hawkins is Entitled to Qualified Immunity on Mr. Banks' Equal Protection Claims Against Ofc. Hawkins and the City of Shannon Hills.**

As thoroughly discussed above, Mr. Banks cannot offer any evidence to prove a discriminatory effect and purpose—or that Ofc. Hawkins acted *solely* based on race. *Frazier*, 408 F.3d at 1108 (emphasis added). Ofc. Hawkins did not personally choose to pursue the Banks' residence and had no knowledge of the race of the Mr. Banks when he responded. **SUMF ¶ 24.**

Ofc. Hawkins was simply dispatched and ordered to respond to a possible domestic violence at the

residence. **SUMF 18.** Mr. Banks cannot show clearly established rights under the Equal Protection

Clause; therefore Ofc. Hawkins and the City of Shannon Hills are entitled to summary judgment

on Mr. Banks' Equal Protection claims.

> **D.    The City and Officer Hawkins Are Entitled to Summary Judgment Because No Municipal Policy, Custom, or Deliberately Indifferent Failure to Train or Supervise Motivated the Alleged Violation.**

Mr. Banks has sued Ofc. Hawkins in his official capacity, as well as the City of Shannon

Hills itself. "The Supreme Court has held that an 'official capacity' suit is not a suit against the

official personally, for the real party in interest is the government entity of which the officer is an

agent." *McCaslin v. Wilkins*, 17 F. Supp 2d 840, 844 (W.D. Ark. 1998) (citing *Kentucky v.*

*Graham*, 473 U.S. 159 (1985)). Official capacity suits represent "only another way of pleading an

action against an entity of which an officer is an agent." *See Graham*, 473 U.S. at 166 (citing

*Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). Thus, for purposes of this portion of the brief Ofc.

Hawkins in his official capacity and the City will be one in the same.

For municipal liability to attach under § 1983, a plaintiff must prove that a municipal policy

or custom was the moving force behind the alleged constitutional violation. *Monell v. Dep't of*

*Social Servs.*, 436 U.S. 658, 691 (1978); *see, e.g.*, *Handle v. City of Little Rock*, 772 F. Supp. 434,

437 (E.D. Ark. 1991) (holding that municipal liability may attach when the alleged

unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by [municipal officials]"). The policy or custom requirement

means that a municipality cannot be held vicariously liable for its employees' unconstitutional

acts. *Monell*, 436 U.S. at 691; *see also Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d

649, 651 (8th Cir. 1998) (holding that local governments cannot be held liable under § 1983 on a *respondeat superior* theory).

As demonstrated above and as an initial matter, there has been no constitutional violation and the City may not be held liable under § 1983. *Los Angeles v. Heller*, 475 U.S. 796 (1986). Even assuming a constitutional violation occurred, Mr. Banks cannot demonstrate that a municipal policy, practice, or custom was the moving force behind the alleged constitutional violation, and the City is entitled to summary judgment

### 1.   *The City's Written Policies Are Constitutional on Their Face.*

"The written, official policy of a city is to be given great weight in determining what the city's policies are." *Williams-El v. Johnson*, 872 F.2d 224, 230 (8th Cir. 1989). "[A] municipal policy is not unconstitutional if it might *permit* unconstitutional conduct in some circumstances; it is unconstitutional only if it '*requires* its officers to act unconstitutionally.'" *Handle*, 772 F.Supp. 434, 438 (citing *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989)) (emphasis in the original). A written, official policy that satisfies all statutory and constitutional requirements is constitutional as a matter of law; it cannot be said that such a policy officially requires law enforcement officers to commit constitutional violations. *See, e.g.*, *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) (finding that the policies comported to state laws governing training and education of law enforcement officers and that policies expressly directed officers to comply with constitutional standards).

Mr. Banks cannot point to any written official policy of the City that requires its law enforcement officers to act unconstitutionally because one does not exist. Therefore, Mr. Banks cannot demonstrate that the alleged constitutional violations were caused by the City's official written policies.

2.      ***Mr. Banks Cannot Demonstrate That A Continuing, Widespread, Persistent Pattern of Unconstitutional Misconduct Existed or A Deliberate Indifference to or Tacit Authorization of Such Conduct.***

Custom is demonstrated by showing a continuing, widespread, persistent pattern of unconstitutional misconduct and deliberate indifference to or tacit authorization of such conduct after notice of such misconduct. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998). Here, Mr. Banks has not and cannot show a pattern of similar uses of alleged excessive force within the Shannon Hills Police Department. Without this showing, Mr. Banks cannot demonstrate notice to the City of unconstitutional misconduct to which the City was deliberately indifferent and therefore cannot show that a custom exists within the Department which would have caused Ofc. Hawkins to unlawfully exercise an excessive level of force on Mr. Banks or any unequal application of laws. As such, the City is entitled to summary judgment.

3.      ***The City is Not Liable Under A Failure to Train Theory.***

Mr. Banks claims that his constitutional rights were allegedly violated as a result of a failure to train Ofc. Hawkins on the part of the City. To prevail on such claim, Plaintiff carries the burden of proving: (1) the City's training practices were deliberately inadequate; (2) the City was deliberately indifferent to the rights of others in adopting the policies, such that the failure to train reflects a deliberate or conscious choice; and (3) an alleged deficiency in the City's training procedures actually caused the plaintiff's injury. *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) (internal quotation and citation omitted); 42 U.S.C. § 1983.

Mr. Banks must show that the need for more or different training is so obvious, and the adequacy so likely to result in violation of constitutional rights, that the City was deliberately indifferent to the need, thereby causing Plaintiff's injury. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989); *see also Andrews*, 98 F.3d at 1075 ("The identified deficiency in a city's training

program must be closely related to the ultimate injury such that the deficiency actually caused the police officer's offending conduct."). In addition, a failure to train claim cannot succeed without the evidence that the municipality "[r]ecieved notice of a pattern of unconstitutional acts committed by [its employees]." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (citing *Parish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 1020)).

Mr. Banks failed to provide any evidence of prior bad acts that suggest that the police officers in Shannon Hills, and more specifically Ofc. Hawkins needed more training, or that any prior bad acts were ignored by a final policymaker. For this reason alone, assuming *arguendo* a constitutional violation did occur, the City is entitled to summary judgment on Mr. Banks' claim for failure to train. In addition, the leading Eighth Circuit cases on this topic hold that "on-the-job training and education at policy academy are . . . sufficient to avoid failure-to-train liability." *Andrews*, 98 F.3d at 1078−79. Under *Andrews* and the associated case law, recurrent training is not required. *Id.* Ofc. Hawkins graduated from the police academy on April 17, 2015. As such, the City is entitled to summary judgment on Mr. Bank's claim for failure to train.

### 4.    *The City is Entitled to Summary Judgment on Mr. Banks' Failure to Supervise Claim.*

"Under [] [§] 1983 'a claim for failure to supervise requires the same analysis as a claim for failure to train.'" *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (citing *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir. 2007)). "Neither claim can succeed without evidence the municipality '[r]eceived notice of a pattern of unconstitutional acts committed by [its employees].'" *Atkinson*, 709 F.3d 1201 (citing *Parish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010)). As discussed in detail above, Mr. Banks has presented no evidence that the City had reason to believe, before the events giving rise to this case, that its training or supervision of Ofc. Hawkins or any officer of the Shannon Hills Police Department was inadequate. Mr. Banks has presented

no evidence that the City was on notice of a pattern of unconstitutional acts committed by its officers. Absent some form of notice, the City cannot be deliberately indifferent to the risk that its supervision of its officers would result in a violation of a particular constitutional or statutory right, and the City is entitled to summary judgment.

> **5.**     ***The City is Entitled to Summary Judgment on Mr. Banks' Negligent Hiring Claim.***

The City of Shannon Hills cannot be held liable based on its decision to hire Ofc. Hawkins. In order to establish liability on a negligent hiring claim, Mr. Banks must show that the City, in hiring Ofc. Hawkins, disregarded a known or obvious consequence amounting to deliberate indifference. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 396, 410 (1997). Further, the "known or obvious consequence" must be the injury which the Plaintiff alleges. *Id.* at 411. The Plaintiff "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* Mr. Banks has not shown that the City's decision to hire Ofc. Hawkins was inadequate and cannot show, and has not alleged, that there was an obvious casual link between any allegedly inadequate hiring decision and a violation of his constitutional rights.

> **i.**     ***Mr. Banks has not alleged and cannot show that the City's hiring procedure with regards to Ofc. Hawkins was inadequate such as to constitute deliberate indifference to Mr. Banks' rights.***

Mr. Banks alleges that the City failed to "properly hire" Ofc. Hawkins. "Where a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record . . . there is a particular danger that a municipality will be liable for an injury not directly caused by a deliberate action attributable to the municipality itself." *Brown*, 520 U.S. at 410. Because of the danger in "cases involving constitutional injuries allegedly traceable to an

ill-considered hiring decision . . . a municipality will be held liable for an injury that it did not cause" the Supreme Court has held that a "showing of simple or even heightened negligence will not suffice." *Id*. at 407, 415. Instead, the Plaintiff must show deliberate indifference. *Id*. at 410.

In *Andrews v. Fowler*, a young woman was picked up at her house by a North Sioux City police officer while he was on duty and later taken into the woods and raped.  98 F.3d 1069, 1073 (8th Cir. 1996). North Sioux City's hiring policies are very similar to Shannon Hills': requiring a standard application form, background checks, interviews with applicant, and physical and psychological examinations. *Id*.at 1076–77. The plaintiff in *Andrews* alleged that the city was liable for inadequate hiring under § 1983 because the defendant officer was not required to undergo a psychological evaluation, the city did not check his prior employment record, and the city did not verify the status of his military discharge. *Id*. At 1077. The court held that "[w]hile the actual hiring process given to [the officer's] application may not have fully conformed to the city's official policy, this failure in one instances" did not create a constitutional violation. *Id*. The court further pointed out that "[a] negligent failure to check every reference or every past employment record does not evidence deliberate indifference on the part of the city." *Id*.

Mr. Banks has presented no evidence which indicates that the City was in any way negligent, let alone deliberately indifferent, in hiring Ofc. Hawkins. As part of the hiring process for Officer Hawkins, the Shannon Hills Police Department reviewed Hawkins' background by verifying his citizenship and age, checking his criminal background through a fingerprint record check, performing a background investigation, confirming his high school education, confirming physical competence, conducting an interview, confirming psychological examination and basic police training certification, and receiving an audit report from the Arkansas Commission on Law Enforcement Standards confirming his current law enforcement certification.  **SUMF ¶ 102.**  Mr.

Banks can point to nothing from Ofc. Hawkins' background which indicates that Ofc. Hawkins has ever unlawfully used force against an individual while being a police officer. Because the City did conduct a background check which indicated no past issues of unlawful use of force, the City clearly could not have been deliberately indifferent to a risk of a constitutional violation in hiring Ofc. Hawkins. Mr. Banks has failed to show that the City was deliberately indifferent to his constitutional rights. Thus, the City is entitled to summary judgment for Mr. Banks' negligent hiring claim.

> **ii.** **There is no casual connection between the decision to hire Ofc. Hawkins and Mr. Banks' alleged constitutional injury to show that the City was deliberately indifferent to the Mr. Banks' constitutional rights.**

The Supreme Court directed the courts to "carefully test the link between the policymaker's inadequate decision and the particular decision and the particular injury alleged." *Brown*, 520 U.S. at 410. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the *plainly obvious* consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id*. at 711 (emphasis added). "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant's produced a specific constitutional violation." *Id*. at 410−411 (emphasis in original).

In establishing this connection, the court in *Bryan County* found that specificity is key: "[liability] must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id*. at 412. The plaintiff, in *Bryan*

*County* alleged that the officer's prior record demonstrated a propensity for violence that made his use of excessive force likely. *Id.* at 413. The officer's record, however, further revealed that apart from some driving infractions, the officer's misdemeanor offenses all stemmed from a single incident when the officer was a college student. *Id.* The court found that, while this may have made the officer a "poor candidate," unless the sheriff would necessarily have also concluded that "[the officer's] use of force would have been a plainly obvious consequence of the hiring decision, [the sheriff's] inadequate scrutiny of the [officer's] record cannot constitute 'deliberate indifference'" *Id.* at 414.

In the present case, as discussed in detail above, Mr. Banks can present no evidence that Ofc. Hawkins' records revealed anything that would have indicated alleged unlawful force would be an obvious consequence of hiring him. Nothing in Ofc. Hawkins' record indicated that he had ever engaged in unlawful use of excessive force or may be likely to do so. Because Mr. Banks has not shown that the alleged violation of his constitutional rights would have been a "plainly obvious" result of the City's decision to hire Ofc. Hawkins, the City was not deliberately indifferent to his rights and cannot be held liable for an alleged inadequate hiring decision. Therefore, the City is entitled to summary judgment for Mr. Banks' inadequate hiring claim.

    **E.**    **Mr. Banks' Allegation That The City of Shannon Hills Ratified Officer Hawkins Actions Fail, Because the Theory of Ratification Fails to Establish That Any Alleged Acts of The City *Actually Caused* Mr. Banks' Alleged Injury.**

42 U.S.C. § 1983 contains a strict causation provision, requiring a plaintiff to show that a defendant "subject[ed] or cause[d the plaintiff] to be subjected" to deprivation of a federally protected right. In the context of municipal liability, the Supreme Court has interpreted this language to protect municipalities from respondeat superior liability by requiring that municipal acts be the cause-in-fact and the proximate cause of the plaintiff's alleged injury. *Jett v. Dallas*

*Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *Tuttle*, 471 U.S. at 817−19 (plurality opinion); *Monell*, 436 U.S. at 690−95. This causation theory is at odds with the theory of post-conduct affirmation purportedly established by ratification. In fact, the Eighth Circuit relies on *contemporaneous notice* of unconstitutional misconduct to find that municipality has in fact ratified that conduct. *Dixon v. Lowery*, 302 F.3d 857, 867 (8th Cir. 2002).

To establish a ratification claim there must be an allegation that a "final policymaker ratifie[d] the decision of a subordinate when he or she takes an affirmative act to approve both the decision and the basis for the decision." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). "Accordingly, ratification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act." *Id.* (citing *Lytle v. Carl*, 382 F.3d 978, 988 n.2 (9th Cir. 2004)). Finally, and most importantly, the Plaintiff must allege, like with any municipal liability claim, that the city caused the constitutional violation. *L.A. Cty. v. Humphries*, 562 U.S. 29, 30–31 (2010).

Under Arkansas law, the city council is the final municipal policymaker with respect to the policies of the police department. A.C.A. § 14-52-101 states "[t]he city council shall have the power to establish a city police department, to organize it under general superintendence of the mayor, and to prescribe its duties and define its powers." (West 2014). In *Brinkley v. City of Helena-West Helena*, the court held that, while A.C.A. § 14-52-101 provides the day-to-day supervision of the police department is undertaken by the mayor, it specifically imbues the city council with the authority to make police department policy. 2:11-CV-00207-SWW, 2014 WL 4164614 (E.D. Ark. Aug. 21, 2014). Similarly, the court has made clear that a chief of police is not a final policymaker. *Lewis v. Thomason*, No. 07–6033, 2009 WL 426543 (W.D. Ark. Feb. 20,

2009). As such, the *city council* is the final municipal policymaker when it comes to the official policies of the Shannon Hills Police Department. Mr. Banks has not and cannot offer any evidence that a final policymaker, the city council of Shannon Hills, ratified the decision of a subordinate or made an affirmative act to approve both the decision and the basis for the decision.

Mr. Banks makes a sparse attempt to establish any of the requirements of ratification by offering nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Mr. Banks offers no substantive allegation against the City when making its ratification claim. There is absolutely no manner of proof that the City's acts somehow *actually caused* or was the proximate cause of the Mr. Banks' injuries, as there are no prior unconstitutional acts of which the City, by and through its final policymakers, was aware; therefore, there is no possibility that *past* decisions by the City may establish a pattern of ratification sufficient to establish causation. (emphasis added). Therefore, Mr. Banks' ratification claim fails and the City's motion for summary judgment should be granted.

## V.      CONCLUSION

Mr. Banks failed to establish a cause of action under 42 U.S.C. § 1983 and the United States Constitution for violation of the Fourth and Fourteenth Amendment. Assuming arguendo that such a constitutional violation did not occur—Ofc. Hawkins is entitled to qualified immunity as a reasonable officer would not have known that the actions taken by Ofc. Hawkins would violate a clearly established right. Furthermore, Mr. Banks failed to offer evidence of any policy, practice, or custom to warrant municipal and official liability.

WHEREFORE, Defendants respectfully request that this Court grant their Motion for Summary Judgment, and for all other just and proper relief to which they are entitled.

Respectfully submitted,

BY:    Sara Monaghan
Ark. Bar No. 2005276
Attorneys for Defendants
P.O. Box 38
North Little Rock, AR 72115
TELEPHONE: 501-978-6122
FACSIMILE: 501-537-7262
EMAIL: smonaghan@arml.org