**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DISTRICT**

**JOHNNY BANKS**                                                        **PLAINTIFF**

**VS.**                       **CASE NO. 4:18CV00259 BSM**

**SHELBY HAWKINS, in his individual capacity,**
**et al.**                                                        **DEFENDANTS**

**Plaintiff's Responses to Defendants' Amended**
**and Substituted Statement of Undisputed Material Fact**

Plaintiff, by and through undersigned counsel, objects to Defendants' Amended and

Substituted Statement of Undisputed Material Fact Material Facts numbered 4, 8, 9, 12, 13, 14,

15, 16, 18, 19, 20, 22, 23, 24,25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 38, 39, 40,41, 42, 44,

45, 46, 47, 48, 49, 50, 53, 54, 55, 57, 58, 59, 60, 61, 62, 68, 69, 70, 71, 72, 74, 75, 76, 77, 79, 80,

81, 82, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 97, 98, 99, 100, 102, and 103 pursuant to Rule

56(2):

> A party may object that the material cited to support or
> dispute a fact cannot be presented in a form that would be
> admissible in evidence.

Plaintiff further objects to Material Facts 104 -112 as they are the inadmissible testimony

of John Ryan, defendants' expert.

Finally, plaintiff also submits his Statement of Undisputed Facts in support of his denial

of Defendants' Amended and Substituted Statement of Undisputed Material Fact.

## I.     The Cheating Letter and Facebook Post

1.   On February 17, 2017 Vanessa Banks (hereinafter, "Ms. Banks") received a letter

in the mail without a return address stating that Johnny Terry Banks (hereinafter, "Mr. Banks) had

1

cheated on Ms. Banks with multiple women. *See Exhibit A, Deposition of Johnny Banks*, 26:24−25, 27:1−2; *Exhibit B, Deposition of Vanessa Banks*, 22:24−25, 23:2−3.

     **Response**:  Plaintiff admits the allegations in paragraph 1.

     2.   Ms. Banks made a Facebook post about the letter stating: "[w]hen I'm trying to study for [the] ACT[], I get this letter in the mail," attaching a picture of the letter and the envelope to the Facebook post.  *Exhibit A,* 26:22−24; *Exhibit B,* 23:8−9.

     **Response**:  Plaintiff admits the allegations in paragraph 2.

     3.   Mr. Banks was working a night shift at Lowe's when he was put on notice that the Facebook post existed. *Exhibit A,* 26:18−20; *Exhibit B,* 23:22.

     **Response**:  Plaintiff admits the allegations in paragraph 3.

     4.   When Mr. Banks saw the Facebook post he "got mad." *Exhibit C-1, Relevant Portions of Defendants' Response for Production #5, ASP Interview of Johnny Banks, 20*; *see also Exhibit A,* 27:18−21.

     **Response**: Plaintiff objects to the evidence in support of this fact pursuant

Rule 56(2).

     5.   Mr. Banks called his wife, Ms. Banks, and asked her "[w]hat are you doing? Why would you put that on Facebook? This is not true, I'm not cheating on you." Ms. Banks immediately hung up on Plaintiff. *Exhibit A,* 26:18−20; *Exhibit B,* 23:9−11.

     **Response:** Plaintiff admits the allegations in paragraph 5.

     6.   Mr. Banks and Ms. Banks exchanged a few text messages; in two of the text messages Ms. Banks stated: "I'm done. I can't be with someone who is going to cheat on me." And "I'M DONE." *Exhibit A,* 26:8−12.

     **Response**: Plaintiff admits the allegations in paragraph 6.

7.   Mr. Banks' boss let Plaintiff leave work for a "family emergency." *Exhibit A,* 26:13−15.

**Response:** Plaintiff admits the allegations in paragraph 7.

8.   Mr. Banks left work and while in route to his residence called his father and explained the situation to him. *Exhibit A,* 27:16; *Exhibit C-1, #5, ASP Interview of Johnny Banks, 12.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant Rule 56(2).

9.   Mr. Banks' father responded by telling him multiple times "[s]on, just *calm down*." *Exhibit A,* 27:22−25, 28:1−2 (emphasis added); *Exhibit C-1, #5, ASP Interview of Johnny Banks, 12.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant Rule 56(2).

## II.   The Banks' Argument

10.   Mr. Banks arrived at his residence and proceeded to confront Ms. Banks about the Facebook post and the letter. *Exhibit A,* 28:7−10; *Exhibit B,* 23:24−25.

**Response**: Plaintiff admits the allegations in paragraph 10.

11. Ms. Banks requested she be able to leave and began packing her suitcase. *Exhibit A,* 29:2−9; *Exhibit B,* 23:24−25, 24:1−11.

**Response**: Plaintiff denies that Mrs. Banks requested that she be able to leave.

12. An argument between Mr. Banks and Ms. Banks ensued. *Exhibit A,* 28:21; *Exhibit B,* 23:24−25, 24:1−4; *Exhibit C-1, #5, ASP Interview of Johnny Banks, 12.*

**Responses:**  Plaintiff objects to the evidence in support of this fact pursuant

Rule 56(2).

13.Ms. Banks informed Mr. Banks that she was going to call the police and, in fact,

called 911. *Exhibit A, 29:12−13; Exhibit B, 23:24−25, 24:1−4; Exhibit C-2, #5, ASP, 911 Audio

Recording.*

**Responses:**  Plaintiff denies.  Mrs. Banks had the 911 operator on hold during the

dialogue with Mr. Banks. Plaintiff objects to the evidence in support of this fact pursuant

Rule 56(2).

14.Ms. Banks did not say anything to the 911 operator and threw her phone on the bed.

*Exhibit A, 29:18−19; Exhibit B, 23:24−25, 24:7−9; Exhibit C-2, #5, ASP, 911 Audio Recording.*

**Response**:  Plaintiff objects to the evidence in support of this fact pursuant

Rule 56(2).  Without waiving objection, plaintiff admits the allegations in paragraph 14.

15.Ms. Banks did not say anything to the 911 operator because she feared that if Mr.

Banks found out she called 911, Mr. Banks would "jerk away" her phone or that Mr. Banks would

"hold the door and [][she] wouldn't be able to go." *Exhibit C-3, #5, ASP Interview of Vanessa

Banks, 47.*  And "because [][she] knew that they[] [were] going to listen to the call and they[]

[were] going to dispatch a unit." *Exhibit B, 24:7−9.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant

Rule 56(2).Plaintiff admits the last sentence of paragraph 15.

16.Ms. Banks and Mr. Banks went back and forth yelling; Ms. Banks yelled multiple

times for Mr. Banks to leave, please go, and Mr. Banks responded. *Exhibit B, 35:23−25, 36:1−24,

76:14−25, 77:1−5, 80:5−11; Exhibit C-2, #5, ASP, 911 Audio Recording.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant

Rule 56(2).

17. At this point Ms. Banks hung up the phone because she knew that the operator had

"hear[d] what was going on . . . [and] there would be a police officer coming." *Exhibit B,* 24:9−11.

**Response:**  Plaintiff admits the allegations in paragraph 17.

### III.      The 911 Call and Dispatch of Ofc. Hawkins

18. Based on the 911 call, Saline County Central ("Dispatcher") dispatched Ofc. Hawkins

of the Shannon Hills Police Department to the Red Hawk Cove area of Alexander, Arkansas for a

domestic disturbance and 911 hang up/open-line.  *See Exhibit C-2, #5, ASP Audio Recording; C-*

*6, ASP Interview with Shelby Hawkins, 81; Exhibit C-4, #6, Shannon Hills Police Department*

*Incident Report No. 17-00060, 63; C-5 SHPD Statement Form of Officer Shelby Hawkins, 69*;

*Exhibit D, Deposition of Officer Shelby Hawkins*, 30:12−6, 33:1−4.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant

Rule 56(2).

19. The Dispatcher told Ofc. Hawkins that the 911-caller, later identified as Ms. Banks,

did not say anything.  *Exhibit A,* 29:18−19; *Exhibit B,* 23:24−25, 24:7−9; *Exhibit C-2, #5, ASP*

*Audio Recording; C-4, #6, SHPD Incident Report, 63*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant

Rule 56(2).

20. The Dispatcher informed Ofc. Hawkins that the only communication heard was a

 male and female arguing; the female crying and screaming at a male to leave, and a male

screaming back at the female. *See Exhibit B,* 76:13−25, 77:1−5, 23−25, 78:1−2, 20−24, 79:2−25,

80:5−11; *Exhibit C-3, #5, ASP Interview of Vanessa Banks, 47*; *C-2, ASP 911 Audio Recording 1:51-2:14*; *C-4, #6, SHPD Incident Report, 63*; *C-5, SHPD Statement Form of Officer Shelby Hawkins*, *69*; *Exhibit D, 30:5−6.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant Rule 56(2).

21. Ms. Banks confirmed on record that the voice from the 911 recording was in fact her. *Exhibit B,* 34:2−12; 76:19−21; 79:15−16. In the 911 call she can be heard saying: "Please leave (crying). Just go. Just go. Go. I want you to leave. Please go." *Id.* at 76:19−21.

**Response:** Plaintiff admits the allegations in paragraph 20.

22. The dispatcher attempted to make contact back with Ms. Banks, but the caller did not answer. *See Exhibit C-4, #6, SHPD Incident Report, 63; Exhibit C-2, #5, ASP 911 Audio Recording 2:24−2:41.*

**Response**: Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

23. While Ofc. Hawkins was in pursuit to the Red Hawk Cove area the dispatcher "pinged" the phone to the address: 3023 Red Hawk Cove. *See Exhibit C-2, #5, ASP Audio Recording; Exhibit C-4, #6, SHPD Incident Report, 63*; *Exhibit D,* 31:8−12, 33:1−4.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff admits the allegations in paragraph 23.

24. Before being dispatched to the address on February 17, 2017, Ofc. Hawkins had never responded to the residence or in fact been to the residence, or encountered, had prior dealings with, or knowledge of Mr. or Ms. Banks. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 103*.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule

56(2).

**IV.    Description of The Banks' Residence: 3023 Red Hawk Cove**

25. The Banks residence is located at the corner of Red Hawk Cove and Falcon Crest Street in Shannon Hills, Arkansas. *See Exhibit C-7, #5, ASP Special Agent Notes Diagram of the Banks' Residence, 133; C-8, ASP Photographs of the Banks Residence, 136.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph 24.

26. The front door of the residence faces Red Hawk Cove and is at the end of a long slender corridor with two brick walls on each side and three brick steps leading to the door. *Id.*

**Response***:* Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph 26.

27.The door to the residence opens inward. *Id.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph the allegations in paragraph 27.

28. If facing the door from outside the residence: the doorknob is to the left of the door with a dead bolt lock located directly above the doorknob. *Id.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph 28.

29. A metal sign was affixed to the door with a metal rod; the sign measured approximately two feet two inches (2'2") wide and two feet (2') tall and read "The Banks." Id.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph 29.

30. The metal sign was centered and hung one foot and one inch (1'1") from the top of the door and four feet and two inches (4'2") from the bottom of the door. *Id.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph 30.

31. The Banks' bedroom is located at the front left of the house with the bedroom wall running adjacent to the left wall of the corridor leading to the front door of the residence. *Id.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph 31.

32. The bedroom has a large window at the front of the house facing Red Hawk Cove. *Id.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph 32.

33. The garage is located at the back-left corner of the residence with two vehicles parked in the driveway at an angle. *Id.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits the allegations in paragraph 33.

## V.      Ofc. Hawkins Arrival at 3023 Red Hawk Cove

34. Upon Ofc. Hawkins' arrival to the residence, Ofc. Hawkins immediately observed a Chevrolet Avalanche Truck, later identified by the dispatcher as Mr. Banks' vehicle, angled in the driveway with its emergency hazard lights activated, blocking a white Nissan Altima. *Exhibit C-2, #5, ASP 911 Audio Recording; C-7, ASP Special Agents Notes Diagram of Banks' Residence, 133; C-8, ASP Photos of Banks' Residence, 136; C-4, #6, SHPD Incident Report, 63;C-5, SHPD Statement Form of Officer Shelby Hawkins, 69;  Exhibit D,* 51:6−7.

**Response**: Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff denies the allegations in paragraph 34.

35. The vehicle's position and active emergency lights signaled to Ofc. Hawkins that something unusual was occurring. Exhibit C-6, #5, *ASP Interview of Shelby Hawkins, 81*; *Exhibit D,* 51:14, 53:25, 54:3−6, 59:11−18*.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff denies the allegations in paragraph 35.

36.Over the last two years, Ofc. Hawkins has been required to give four separate accounts of the events that occurred when he arrived at 3023 Redhawk's Cove, namely *Exhibit C-6, #5, ASP Interview of Shelby Hawkins; C-4, #6, SHPD Incident Report; C-5, SHPD Statement of Officer Shelby Hawkins and Exhibit D, Deposition of Shelby Hawkins.* While those statements contain minor and non-material inconsistencies with respect to the exact noises he heard within the residence and where the noises were coming from inside the residence—all of his statements have remained consistent and it is undisputed that he heard noises from inside the home that sounded as if a woman's voice was being muffled. *Id.; Exhibit D,* 41:18, 46:7−25, 47:1−14, 53: 7−8, 58: 10−14.  The noises and muffled screams lead Ofc. Hawkins' to believe that a woman's life was in imminent danger. Specifically, Ofc. Hawkins has consistently stated that he heard a woman say "NO! NO! NO! LEAVE!" *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 84;C-5, #6 SHPD Form Statement of Officer Shelby Hawkins, 69; Exhibit D,* 41:18, 46:7−25, 47:1−14.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff denies the allegations in paragraph 36.

37. Soon after arriving, Ofc. Hawkins heard a loud noise, possibly a scream, from

inside the residence. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 81; C-4, #6 SHPD Incident Report, 63; C-5, SHPD Statement Form of Officer Shelby Hawkins, 69; Exhibit D,* 53: 7−8, 58: 10−14.

   **Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits Officer Hawkins stated that he heard a loud screeching sound and it was not a voice.  See PX 1- Officer Hawkins Dep. page 53: 7-13

   38. Ofc. Hawkins proceeded to the front of the residence to determine and pinpoint the exact source of the unidentified noise. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 84, C-4, #6, SHPD Incident Report, 63.*

   **Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

   39. Ofc. Hawkins observed a female voice from inside the residence screaming, *multiples times,* a muffled "NO! NO! NO! LEAVE!"  *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 84; C-4, #6, SHPD Incident Report, 63; C-5, SHPD Statement Form of Officer Shelby Hawkins, 69; Exhibit D,* 41:18, 46:7−25, 47:1−14 (emphasis added).

   **Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff denies the allegations in paragraph 39. The terms "leave" was not mentioned nor the person identified as female. PX1, p. 41. Hawkins changed the term "muffled" to "block" not "blurred". p. 47

   40. The screams sounded as if the woman was being "smothered or choked." *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 105.* "[T]here was a loud 'No,' and that's the one that caught [] [Ofc. Hawkins] attention. And the second 'No' was . . . a lot lower." And the

third No "was louder again." *Exhibit D,* 46:17−25, 47:1−5, 15−18. The second "No" sounded as if it was "blocked . . . [l]ike someone had his hand over one's mouth." *Id.* at 47:3−14.

   **Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  See also Response No. 39.

   41. Ofc. Hawkins approached the front door of the home located in a dark, dim lit corridor. *Exhibit C-8, #5, ASP Photos of Banks' Residence, 136; C-4, #6, SHPD Incident Report, 63*; *Exhibit D,* 74:18.

   **Response**: Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits that Officer Hawkins stated in his deposition that the corridor was dark.

   42.  Ofc. Hawkins knocked on the door of the residence; "knocking and announcing  POLICE DEPARTMENT! POLICE!"  but the knocks went unheeded. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 84; C-4, #6, SHPD Incident Report, 63; Exhibit D,* 62:24−25, 63:2−5.

   **Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff admits that Officer Hawkins stated that the <u>first time</u> he knocked on the door he announced himself, but did not say Police Department! Police! He left and walked back around to listen.

   43. Ms. Banks heard Ofc. Hawkins arrive and his radio from outside the residence while she was in the bedroom with the Plaintiff; Ms. Banks admitted that she and Mr. Banks continued screaming and arguing until she heard Ofc. Hawkins' radio outside the house. *Exhibit B,* 32:9-12, 33:12−25.

   **Response**:  Plaintiff admits the allegations in paragraph 43.

   44. Ofc. Hawkins called backup and requested backup to "step it up." *Exhibit C-2,*

*#5 ASP 911 Audio Recording 4:46; C-4, #6, SHPD Incident Report, 63; Exhibit D, 79:20−23.*

       **Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff admits that Officer Hawkins stated in his deposition that he requested backup to "step it up."

    **VI.**    **Ofc. Hawkins' Forced Entry Due to the Imminent Threat of Danger to Ms. Banks**

       45.Ofc. Hawkins attempted to wait on backup to arrive, but "decided that [he] couldn't wait any longer due to the safety and the unknown threat to the female inside the residence" and Ofc. Hawkins notified the Dispatcher that he was going to make forced entry. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 85; C-4, #6, SHPD Incident Report, 63; Exhibit D,* 115:13−18.

       **Response**: Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff admits that plaintiff stated in his deposition that he decided not to wait for backup because he believed that at this point it was "already, you know, a life-and death situation."

       46.Ofc. Hawkins checked the door to the residence to see if it was unlocked; the doorknob was locked and unable to be opened. *Exhibit C-4, #6, SHPD Incident Report, 63*; *Exhibit B,* 40:20−21.

       **Response:** Plaintiff objects to the evidence in Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits the door was locked.

       47. Once again, Ofc. Hawkins announced "POLICE! to gain the attention of the residents inside the house . . .." *Id.*; *Exhibit D,* 84:5.

       **Response:** Plaintiff admits that Officer Hawkins stated in his deposition that he stated: "I only said "Police.".

48. Ofc. Hawkins was located on the second or third step of the staircase in the dark corridor leading to the door of the residence. *Exhibit C-8*, *#5 ASP Photos of Banks' residence*, *136*; *Exhibit D*, *73:22−24.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits that Officer Hawkins stated that "I was within the first, or excuse me, not the first, but the second, the third step."

49. With his gun out of his holster and pointed to the ground in low-ready position, Ofc. Hawkins kicked the door to the residence three-to-five times. *Exhibit C-4, #6, SHPD Incident Report, 63*; *Exhibit D,* 86: 13−25, 87:1−3.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits that Officer Hawkins stated that he had the gun out of his holster, pointed down to the ground in load ready position. Denies at this point that he stated the remaining allegations.

50. Ofc. Hawkins kicked directly below the doorknob. *Exhibit C-4, #6, SHPD Incident Report, 63*.

**Response**: Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

51. Ms. Banks informed Mr. Banks that the kick was coming from a police officer and that the police had arrived. *Exhibit B,* 25:16−22.

**Response:** Plaintiff admits the allegations in paragraph 51.

52. Mr. Banks "aggressively yelled 'who the fuck is this . . ..'" *Exhibit D,* 101:6−13, 109:6−7; *see also Exhibit A,* 38:25, 39:1.

**Response:** Plaintiff denies the allegations in paragraph 52. The term "aggressive"

is attributed to Banks as defendants' conclusion. It is not fact.

53. On the final kick, Mr. Banks "violently opened" the door from inside the residence with his left hand—placing his right hand on the wall above his head. *Exhibit C-9, #5, ASP Videos (2); C-4, #6 SHPD Incident Report, 63*;  *Exhibit A,* 20:1−4, 37:19−25, 38:14.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).   Deny that plaintiff testified that he violently opened the door.   He did testify to the remainder of the statement.

54. As the door "violently swung open," Ofc. Hawkins "instantly lost his natural night vision because of the blinding lights coming from inside of the residence." *Exhibit C-4, #6, SHPD Incident Report, 63*; *Exhibit D,* 87:11−12, 90:7−25; 91:1−8.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  See Response to No. 48. Plaintiff denies the allegations in paragraph 49.

**VII.   Ofc. Hawkins' Is Struck in the Head**

55. After Mr. Banks violently opened the door, everything happened instantaneously— Mr. Banks opened the door, Ofc. Hawkins observed Mr. Banks in an aggressive stance, Ofc. Hawkins took a defensive position, and Ofc. Hawkins was struck in the head. *Exhibit A*, 15−21; *Exhibit B,* 25:2−9, 42:17−18; Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 97-98; C-4, #6 SHPD Incident Report, 63; Exhibit D,* 87:4−12, 99:8−12. After being struck, Ofc. Hawkins observed Mr. Banks approaching in the same aggressive stance, Ofc. Hawkins feared he was going to lose consciousness and control of his firearm to Mr. Banks, Ofc. Hawkins believed his life, Ms. Banks life, and the lives of others were in imminent danger, and Ofc. Hawkins shot Mr. Banks one time from the low-ready position. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 100; C-4, #6 SHPD Incident Report, 63; Exhibit D,* 87:16−19, 97:1−16, 98:24−25.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff denies the allegations in paragraph 50. See response in 48 and 49.

56. The following facts set out in Paragraphs (57.) – (73.) occurred instantaneously to the door being opened.  *Exhibit A,* 15−21*; Exhibit B,* 25:2−9, 42:17−18.

**Response:**  Plaintiff denies the allegations in paragraph 51.

57. As the door violently opened, Ofc. Hawkins could only see a large male, later identified as Mr. Banks, at the top of the stairs in the doorway of the residence. *Exhibit C-4, #6, SHPD Incident Report, 63; Exhibit D,* 87:11−12.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  See response in 48 and 49. Plaintiff denies the allegations in paragraph 52.

58.  At the time of the incident, Mr. Banks was five-foot ten-inches tall and weighed 240lbs.  *See Exhibit C-1, #5, ASP Interview of Johnny Banks, 10.*

**Response:**   Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

59. Ofc. Hawkins immediately observed Mr. Banks, "standing in a[n] aggressive charging stance with his hands in an open fist outside the doorway." *Exhibit C-4, #6 SHPD Incident Report, 63; Exhibit A,* 20:1−4, 30:15−21, 37:19−25; *Exhibit D,* 87:11−12.

**Response**:  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff denies the allegations in paragraph 59.

60. Mr. Banks was "within arm's reach of [][Ofc. Hawkins] and [][his] service pistol." *Exhibit C-4, #6 SHPD Incident Report, 63*; *Exhibit B,* 41:1−2.

**Response**:  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits the allegations in paragraph 60.

61. Ofc. Hawkins immediately took a defensive position with his firearm tucked closer to his body, in low ready position, and with his right leg positioned behind him, in order to protect his firearm from being grabbed or "snatched out of [his] hand." *Exhibit C-4, #6 SHPD Incident Report, 63; C-6, ASP Interview of Shelby Hawkins, 97-98; Exhibit D,* 87:4−6.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits Officer Hawkins made this statement during his deposition.

62. Ofc. Hawkins "felt a sharp pain in the top right of [][his] head and went into a daze [][,] like [][he] was going to pass out completely." *Exhibit C-4, #6. SHPD Incident Report, 63; Exhibit D,* 99:8−12.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).   Plaintiff denies allegations in paragraph 57.

63. Ofc. Hawkins believed he was struck in the head. *Exhibit D,* 99:8−12.

**Response:**  Plaintiff admits that Officer  Hawkins testified during his deposition that he "something hit me in the head."

64. At this point, Ofc. Hawkins was dizzy, knocked semi-unconscious, and blinded from the light; preventing Ofc. Hawkins from being able to identify who or what struck him in the head. *Exhibit D,* 97:7−9, 98:20−25, 99:1−12, 101:9−13.

**Response**: Plaintiff admits that Officer Hawkins testified during his deposition that he was dizzy, knocked semi-unconscious and denies the remaining allegations in paragraph 59.

65. Mr. Banks was in front of Ofc. Hawkins at all times. *Exhibit D,* 101:9−13.

**Response:**  Plaintiff  denies that Officer Hawkins made this statement in his cited deposition pages.

pages cited.

66. "[Ofc. Hawkins] was in the corridor, and everything was in front of [][him] with two walls on the side and a street and sidewalk . . . behind [][him]." *Exhibit D,101:16−18*

**Response:** Plaintiff admits that Office Hawkins made this statement during his deposition.

67. Ofc. Hawkins yelled "Stop" at Mr. Banks. *Exhibit C-4, #6 SHPD Incident Report, 63; C-6, #5, ASP Interview of Shelby Hawkins, 99; Exhibit D,* 105:20−21.

**Response**: Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).   Plaintiff denies that Hawkins yelled "stop" before he shot Banks. Plaintiff admits that Officer Hawkins testified during his deposition that he said "stop", not yelled stop.

68. Dazed, Ofc. Hawkins "looked up at the [][Mr. Banks and he] appeared to be closer [and approaching him] in the same aggressive stance." *Exhibit C-4, #6 SHPD Incident Report, 63; #5, C-6, #5, ASP Interview of Shelby Hawkins, 97; Exhibit D,* 87:16−17.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).   Plaintiff denies the allegations based upon the cited evidence.

69. At this point, Ofc. Hawkins "felt . . . [like he] was going to go down with [][his] service pistol outside of its holster." *Exhibit D,* 97:9−11; *Exhibit C-6, #5 ASP Interview of Shelby Hawkins, 126-127.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff denies the allegations in paragraph 69.

70. Ofc. Hawkins feared that if he were to go down with his gun unholstered the service pistol "would have been dropped or picked up" by Mr. Banks or someone else. *Exhibit D,* 97:7−12. Ofc. Hawkins' believed that "if [he] passed out this dude's probably going to take [his] gun"

because "[Mr. Banks is] already in that aggressive stance" and if he hit the ground his defense is "going to go out the window." *Exhibit C-6, #5 ASP Interview of Shelby Hawkins, 127*.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff denies factually; admits Hawkins state of mind is irrelevant.

71. At this point, Ofc. Hawkins feared that Mr. Banks "presented himself as a threat to not only [][Ofc. Hawkins], but to everybody else." *Exhibit D*, 97:13−16; *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 126;C-5, #6, SHPD Statement Form of Officer Shelby Hawkins, 69*.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff denies the allegations in paragraph 71.

**Ofc. Hawkins' Response and Use of Force**

72. Ofc. Hawkins, "[f]eeling like [][his] life and safety and the safety and lives of the other parties involved were in danger, [][he] fired [][his] handgun from the low ready position one time." *Exhibit C-4, #6 SHPD Incident Report, 63*; *Exhibit D*, 87:17−19, 97:1−16; 98:24−25.

**Response**: Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff denies the allegations in paragraph 72.

73. Ofc. Hawkins fired one single shot from his service pistol in the low ready position, striking Mr. Banks in the abdomen/upper thigh area. *Exhibit D,* 87:17−19.

**Response:**  Plaintiff can never admit or deny based on the cited evidence.

74. Ofc. Hawkins observed Mr. Banks "walk[] back and lay[] down on the floor of . . . the living room of the residence." *Exhibit C-4, #6 SHPD Incident Report, 63; Exhibit D,* 87:17−21.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff denies the allegations in paragraph 74.

75. Mr. Banks yelled "I've been shot.".  *Exhibit C-4, #6 SHPD Incident Report, 63*.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Without waiving objection, plaintiff testified that he stated he had been shot.

76. A female, later identified as Ms. Banks, came out stating that he needed to shut up, that he had not been shot. *Exhibit C-4, #6 SHPD Incident Report, 63*; *Exhibit D,* 88:10−12.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Without waiving objection, plaintiff admits the allegations in paragraph 76.

77. Ofc. Hawkins radioed that "[he] had one shot and need[ed] medical assistance." *Exhibit C-4, #6 SHPD Incident Report, 63*; *Exhibit D,* 88:7−9.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Without waiving objection, plaintiff admits that Officer Hawkins testified that he called for ambulance assistance.

78. Ofc. Hawkins holstered his service weapon. *Exhibit D,* 121:21−24.

**Response**:  Plaintiff admits that Officer Hawkins testified in his deposition to this allegation.

79. Ofc. Hawkins proceeded into the residence. *Exhibit C-4, #6 SHPD Incident Report, 63.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits the allegations in paragraph 79.

80. Ofc. Hawkins rolled Mr. Banks over to assess his injuries and observed "one gunshot wound to [][Mr. Banks'] left hip/lower stomach area." *Exhibit C-4, #6 SHPD Incident Report, 63*; *see also Exhibit D,* 88:7−8.

**Response**:  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits that Officer Hawkins testified during his deposition the allegations in

paragraph 80.

81. Mr. Banks requested that Ofc. Hawkins call for an ambulance; Ofc. Hawkins informed Mr. Banks that he had already requested medical assistance. *Exhibit C-4, #6 SHPD Incident Report, 63*.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

82. Ms. Banks soon after appeared with towels and Ofc. Hawkins began applying pressure to Mr. Banks' hip area. *Exhibit C-4, #6 SHPD Incident Report, 63*; *Exhibit D,* 88:13−15.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits the allegations in paragraph 82.

83. Ofc. Hawkins requested that Ms. Banks leave the residence and go outside. *Exhibit B,* 27:22.

**Response:** Plaintiff admits the allegations in paragraph 83.

84. Mr. Banks requested that Ofc. Hawkins let him call his father; Ofc. Hawkins instructed Mr. Banks that he needed to keep his blood pressure down and denied Plaintiff's request. *Exhibit D,* 88:17−21.

**Response:** Plaintiff admits the allegations in paragraph 84.

85. Ofc. Hawkins' proceeded to apply pressure to Mr. Banks' hip area until back

up  arrived. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 87; C-4, #6 SHPD Incident Report, 63*; *Exhibit D,* 88:15−16.

**Response**:   Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff admits the allegations in paragraph 85.

86. The pain in Ofc. Hawkins' head began to worsen. *Exhibit C-4, #6 SHPD Incident Report, 63; C-5, #6 SHPD Statement Form of Officer Shelby Hawkins, 69.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

87. Officer Kevin Cooper ("Ofc. Cooper") arrived, entered the residence, and Ofc. Hawkins requested he take over applying pressure to Mr. Banks' hip area. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 87; C-4,  #6 SHPD Incident Report, 63; C-10, #6, SHPD Statement Form of Kevin Cooper, 153; Exhibit D,* 88:21−23.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).   Plaintiff admits the allegations in paragraph 87.

## VIII.   Ofc. Hawkins' Head Injuries

88. Soon after, Ofc. Hawkins was met by Shannon Hills Fire Department and Chief A. Spears who observed him, checked and photographed his head injuries. *Exhibit C-6, #5, ASP Interview of Shelby Hawkins, 88-89; C-11,  Photos of Hawkins' Injuries, 154; C-4, #6 SHPD Incident Report, 63.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

89. Ofc. Hawkins had a cut, swelling, and red bumps on the right side of his forehead. *Exhibit C-11, #5 ASP Photos of Hawkins' Injuries, 154; Exhibit D,* 95:7−9.

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).  Plaintiff denies the allegations in paragraph 89 according to the cited deposition.

90. Plaintiff was transported by MEMS to UAMS. *Exhibit C-4, #6, SHPD Incident Report, 63.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

91. Ofc. Hawkins was transported to Saline Memorial Hospital to assess his head trauma. *Exhibit C-4, #6, SHPD Incident Report, 63*.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

92. John Menard, MD of Saline Memorial assessed Ofc. Hawkins' head injuries from the incident and diagnosed Ofc. Hawkins as suffering from: "CONCUSSION WITHOUT LOC INITIAL ENC." *Exhibit C-12, #5, ASP Hospital Discharge Instructions*, *159*; *Exhibit D, 128:8−12*.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

IX. **Arkansas State Police Investigation**

93. The Arkansas State Police (ASP) investigated the incident and "attempted to locate what may have hit Ofc. Hawkins in the head since [he] stated that he did not know what struck him." *Exhibit C-14, #5 ASP Investigative Supplement, 171*.

**Response**: Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

94. ASP noted that the two feet two inch (2'2") wide and two feet (2') tall sign could have caused the injuries to Ofc. Hawkins' head. *Exhibit C-14, #5, ASP Investigative Supplement*, *170-171*; *Exhibit A,* 38:15−21; *Exhibit C-13, #5, ASP Photos of Banks' door sign, 164*.

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Plaintiff denies the allegations in paragraph 94 given the cited deposition evidence.

95. "When the front door was opened, [it opened inward and] the sign swung outward away from the door, toward the exterior of the residence on the steps." *Id*. at 170. ASP's investigation noted that if the door to the residence is "opened forcefully [] the sign would swing harder outward (away from the door) toward the steps." *Id. at 170; C-9, ASP videos (2).*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2).

96. Mr. Banks admitted to opening the door with force. *Exhibit A*, 38:14.

**Response:**  Plaintiff stated that he opened the door [with] "a little bit of force.

**X.      Shannon Hills Police Department Use of Force Policy**

97. The written and official policies on use of deadly force are outlined in Policy 117 Resistance and Control of the Shannon Hills Police Department's Policy Manual. *Exhibit C-15, #7, Excerpts from SHPD Policies and Procedures, Resistance and Control, 174.* Specifically, it states in relevant part that "[a]ll responses to resistance events involving death or serious bodily injury will be reviewed for legal and policy compliance by the Chief of Police or their designee." *Id.* Furthermore, under the same policy, "deadly force is defined as "[f]orce that creates a substantial likelihood of causing serious bodily harm or death." *Id.*

**Response:**  Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits to the allegations in paragraph 97.

98.  Regarding the force used by an officer the policy states in relevant part: "Force Options: Officers have several force options that will be dictated by the actions of the suspect upon the appearance of the police officer . . .. In any given circumstance there will be a range of options that may be reasonable. At no time should these options be considered a ladder which must be attempted one progressive step at a time." *Id.*

**Response:** Plaintiff objects to the evidence in support of this fact pursuant to Rule 56(2). Without waiving objection, plaintiff admits to the allegations in paragraph 98

## XI.     The Hiring of Ofc. Hawkins And His Credentials

99. Ofc. Hawkins graduated from the police academy on or about April 17, 2015. *Exhibit C-16, #7, SHPD Personnel File of Officer Shelby Hawkins, 200.*

**Response:** Plaintiff admits the allegations in paragraph 99.

100. Ofc. Hawkins worked for the Alexander Police Department from or about November 1, 2014 to July 23, 2016. *Id,* 183.

**Response:** Plaintiff admits the allegations in paragraph 100.

101. Ofc. Hawkins left the Alexander Police Department and was hired by the Shannon Hills Police Department on or about July 23, 2016. *Id,* 183; *Exhibit D, 14: 14.*

**Response:** Plaintiff admits the allegations in paragraph 101.

102. As part of the hiring process for Officer Hawkins, the Shannon Hills Police Department reviewed Hawkins' background by verifying his citizenship and age, checking his criminal background through a fingerprint record check, performing a background investigation, confirming his high school education, confirming physical competence, conducting an interview, confirming psychological examination and basic police training certification, and receiving an audit report from the Arkansas Commission on Law Enforcement Standards confirming his current law enforcement certification. *Id*, 183-184, 191-232.

**Response:** Plaintiff can neither admit nor deny. Those items are in Exhibit 7, however.

103. Ofc. Hawkins' trainings and certificates include, but are not limited to: Basic Certification; Radar Operator; Chemical Breath Alcohol Testing; Basic Sniper Course; Sharp Shooter; Taser Training Academy; Emergency Management Institute; Domestic Violence and

Child Abuse; Racial Profiling; National Fire Academy; Arkansas Fire Training Academy; DWI Detection Training; CLEST Certified Patrol Rifle Course Training; Foundations of Supervision and Leadership Online; Crime Scene First Responder for the Uniformed Officer Online; Community Orientated Policing. *Id*, 214-231.

    **Response**: Plaintiff can neither admit or deny. Those items are in Exhibit 7, however.

## XII.    Defendant Expert, John J. Ryan

    104.  Defendant Expert, John J. Ryan made clear that "[a]ny reasonable and well trained officer, based on common law enforcement training, confronted with this set of circumstances, would reasonably perceive that he or she was facing an immediate threat of serious bodily harm or death and that anyone else in the area, including the domestic violence victim was facing a similar threat and that a use of deadly force would be consistent with generally accepted law enforcement policy, practice, training, and legal mandates trained to officers for application in field operations." *Exhibit E, Defendants' 3rd Supplemental Response to Request for Production, Expert Report of John J. Ryan, ¶ 74.*

    **Response:** Plaintiff objects and denies the allegations in paragraph 104.  This is a question of fact and ultimate issue for the jury.

    105.  Expert Ryan based his opinion on the reasoning provided by Ofc. Hawkins and the facts and circumstances surrounding the incident, including: "[Ofc.] Hawkins was responding to a dispatched domestic violence call in which the complainant could not be contacted; [Ofc.] Hawkins noted a vehicle with the flashers on outside the residence; [Ofc.] Hawkins heard a male also yelling in the residence; [Ofc.] Hawkins was by himself at nighttime; [Ofc.] Hawkins noted no response to his knock and announcement; [Ofc.] Hawkins noted the door suddenly opened with what he perceived [and Plaintiff admits] to be an aggressive subject in the doorway; and [Ofc.]

Hawkins felt a strike to his head that dazed him in a manner that led him to believe he may lose consciousness." *Id.*

**Response:**  Plaintiff objects and denies the allegations in paragraph 105.  Hawkins did not know who the complainant was or what the complaint was, make yelling in the residence- both were talking but not loud enough for the officer to hear what was being said. No response to his knock but did not attempt entry.

106. A ten-year study by the International Association of Chiefs of Police statistically shows that "police officers killed feloniously . . . reveal that about fifteen percent of police homicides were perpetrated by assailants using the officer's own handguns." *Id.* at ¶ 76, fn. 2.

**Response:**   Plaintiff objects and denies the allegations in paragraph 106. This testimony is not admissible testimony. It is disputed whether Hawkins was trained as other officers in the United States.

107. "Officers throughout the United States are trained with respect to the danger of going hands on with a violent subject" but "it is recognized that close-quarter, hands on conduct with a violent and[d] unpredictable subject brings the officer's weapon within the reach of the subject increases the level of danger to anyone in the area of the event." *Id.* at ¶ 76.

**Response:**  Plaintiff objects and denies the allegations in paragraph 107.  This testimony is not admissible testimony.  It is disputed whether Hawkins was trained as other officers in the United States.

108. "Officers are also aware that a single officer is subject to an even greater threat due to the lack of assistance by other officers." *Id*

**Response:** Plaintiff objects and denies the allegations in paragraph 107.  This testimony

is not admissible testimony.  It is disputed whether Hawkins was trained as other officers in the United States.

109. "All officers are trained that when faced with this type of threat where the subject will have access to the weapon of an officer who is incapacitated, the officer's use of deadly force is consistent with generally accepted polices . . .." *Id.* at ¶ 77.

**Response:** Plaintiff objects and denies the allegations in paragraph 107.  This testimony is not admissible testimony.  It is disputed whether Hawkins was trained as other officers in the United States.

110. If "an officer is confronted with an immediate threat of serious bodily harm or death [then] the trained response is the use of deadly force to stop the threat." *Id.* at ¶ 81.

**Response**:  Plaintiff objects and denies the allegations in paragraph 110.  Factually there were no confrontation with Hawkins with immediate threat of serious bodily harm.

111. Other options, such as a baton or taser, "while of course reasonable, are discouraged due to the fact that if such less-lethal options are unsuccessful, the officer will be unable to transition to [the use of] deadly force before the threat is carried out by the subject." *Id.* at ¶ 82.

**Response:**  Plaintiff objects and denies the allegations in paragraph 111. This allegation is inconsistent with the facts.

112. "The deployment of less-lethal options such as a taser or baton would not be indicated under these circumstances due to the fact that there is no lethal-cover [backup] officer available and a decision to use less-lethal [force] would deprive the solo [Ofc. Hawkins] from protecting himself and others from a lethal threat that presents itself." *Id.* at ¶ 82.

**Response**:  Plaintiff objects and denies the allegations in paragraph 111. This allegation

is inconsistent with the facts.

> Respectfully submitted,
> /s/John W. Walker
> John W. Walker -AB64046
> John W. Walker, P.A.
> 1723 Broadway
> Little Rock, Arkansas   72206
> 501-374-3758
> 501-374-4187(fax)
> Email:  johnwalkeratty@aol.com