United States District Court
Eastern District of Arkansas
Eastern Division

**Johnny Banks**                                                                                    **Plaintiff**

v.                              **Case No. 4:18-cv-00259-BSM**

**Shelby Hawkins,**                                                                              **Defendants**
**in his individual Capacity;**

**City of Shannon Hills, Arkansas**

**The Plaintiff's Motion in Limine to Exclude John J. Ryan's Report from Evidence and to bar him from Testifying as an Expert**

On June 17, 2019, John J. Ryan ("Mr. Ryan") submitted an "expert report" in support of the litigation position of the Defendants in this case Shelby Hawkins ("Officer Hawkins") and the City of Shannon Hills, Arkansas ("Shannon Hills").[1] Neither Mr. Ryan's report nor what he proposes to testify to as an ostensible expert satisfies the requirements of Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, or *Kumho Tire Co., Ltd. v. Carmichael*, therefore, the Court should exclude his report from evidence and bar him from testifying as an expert. The Plaintiff, Johnny Banks ("Mr. Banks"), will now elaborate on why Mr. Ryan's report should be excluded from evidence and why he should be barred from testifying as an expert.

On June 28, 1993, the Supreme Court of the United States decided *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and announced the framework that federal courts use today in determining the admissibility of expert testimony. 509

---

[1] A copy of Mr. Ryan's June 17, 2019 report is attached as Exhibit A.

U.S. 579, 592-595 (1993). When a trial court is presented with a proffer of expert testimony, *Daubert* requires that court to first ascertain whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. 509 U.S. at 592-593. This in turn requires the court to preliminarily assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts in issue in a proper fashion. *Daubert*, 509 U.S. at 592-593.

A central question a court must answer in determining whether a theory or technique is scientific knowledge that will assist the trier of fact is whether the theory or technique can be and has been tested. *Daubert*, 509 U.S. at 593. Another important consideration is whether the theory or technique has been subjected to peer review and publication. *Daubert*, 509 U.S. at 593. Additionally, in the case of a particular scientific technique, the court should consider the known or potential error rate and the existence and maintenance of standards controlling the technique's operation. *Daubert*, 509 U.S. at 594 (citing *United States v. Smith*, 869 F.2d 348, 353-354 (7th Cir. 1989) (surveying studies of the error rate of the spectrographic voice identification technique); *United States v. Williams*, 583 F.2d 1194, 1198 (2d Cir. 1978) (noting a professional organization's standard governing spectrographic analysis))).

Finally, general acceptance within the relevant scientific community has a bearing on the inquiry because widespread acceptance can be an important factor

in ruling particular evidence admissible, and a known technique that has attracted minimal support within the relevant scientific community should be looked upon with skepticism. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993) (quoting *United States v. Downing*, 753 F.2d 1224, 1238 (3d Cir. 1985); citing 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[03], 702-41 – 702-42))).

Rule 702[2] of the Federal Rules of Evidence forms the backdrop of *Daubert*, and Rule 702's sole focus is principles and methodology, not the conclusions those principles and methodologies generate. 509 U.S. at 594-595. *Daubert* was a watershed opinion in federal evidence law because it explicitly abrogated what was then a seventy year old test for determining the admissibility of novel scientific evidence. 509 U.S. at 585-589. That test was the "*Frye* general acceptance test" established in *Frye v. United States*, 54 App. D.C. 46, 47, 293 F. 1013, 1014 (1923). The *Frye* general acceptance test was derived from the following passage in *Frye*:

> Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, *the thing from which the deduction is*

---

[2] Federal Rule of Evidence 702 says:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

> *made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.*

54 App. D.C. at 47, 293 F. at 1014 (emphasis added).

In *Daubert*, the Supreme Court held that the *Frye* general acceptance test was superseded when Congress enacted the Federal Rules of Evidence on January 2, 1975. 509 U.S. 579, 586-589 (1993); An Act To establish rules of evidence for certain courts and proceedings, Pub. L. No. 93-595, 88 Stat. 1926, 1926-1949 (1975). *Daubert* replaced the *Frye* general acceptance test with a Rule 702-centered "reliability" test. 509 U.S. at 589. *Daubert* provided a non-exhaustive list of factors a trial court can consider in conducting a preliminary assessment of the reliability of proffered expert testimony. 509 U.S. at 589-595. While *Daubert* does not demand that every trial court rigidly apply every illustrative factor in every case in which an expert is proffered, it does demand that every trial court assess the reliability of proffered expert testimony before admitting it. 509 U.S. at 595-598.

In the aftermath of *Daubert*, a question arose as to whether it applied to scientific testimony only or to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 146-147 (1999). On March 23, 1999, the Supreme Court of the United States answered that question and held that *Daubert* applies to *all expert testimony*, whether it is denominated "scientific," "technical," or "other specialized" knowledge. *Kumho*, 526 U.S. at 146-147 (emphasis added). In holding that *Daubert* applies to all expert testimony no matter how it is denominated, *Kumho* examined Fed. R. Evid. 702 and concluded that it "makes no relevant

distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge." 526 U.S. 137, 147-148 (1999).

*Kumho* explicitly overruled every lower court case that held *Daubert* was limited to scientific evidence only. 526 U.S. at 151 ("[The Court]…disagree[s] with [those courts]…holding that a trial judge may ask questions of the sort *Daubert* mentioned only where an expert 'relies on the application of scientific principles,' but not where an expert relies 'on skill or experience based observation.'…[The Court does] not believe that Rule 702 creates a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts.").

The Court then made a point to state that Rule 702 and *Daubert* require trial courts to serve a "gatekeeping" function that requires those courts to "make certain that an expert, *whether basing testimony upon professional studies or personal experience*, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152 (emphasis added). In carrying out this gatekeeping function, however, trial courts "…have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable, [i.e.], a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Kumho*, 526 U.S. at 152.

Justice Antonin Scalia wrote a concurrence in *Kumho* and described the Court's holding this way:

> [...the opinion of the Court...makes clear that the discretion it endorses – trial court discretion in choosing the manner of testing expert reliability – is not discretion to abandon the gatekeeping function. I think it worth adding that it is not discretion to perform the function inadequately. Rather, it is discretion to choose among *reasonable* means of excluding expertise that is *fausse* and science that is junky. Though, as the Court makes clear today, the *Daubert* factors are not holy writ, in a particular case the failure to apply one or another of them may be unreasonable, and hence an abuse of discretion.]

526 U.S. 137, 158-159 (1999) (Scalia, J., with O'Connor and Thomas, JJ., concurring) (emphasis in original).

*Daubert* and *Kumho* stand for the proposition that whenever *any* expert testimony is proffered to a trial court, that court must make a preliminary assessment of the relevance and reliability of that testimony as a condition of admitting it into evidence. 509 U.S. 579, 592-595 (1993); 526 U.S. 137, 150-153 (1999) (emphasis added). *Daubert* and *Kumho* also provided a non-exhaustive list of factors that a court may consider in making that preliminary assessment, and emphasized that a court has flexibility in choosing which factors to use. 509 U.S. at 594-597; 526 U.S. at 141-142, 150-153.

Not all expert opinions, however, are admissible. *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (citing *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985)). Opinions phrased in terms of inadequately explored legal criteria or that merely tell the jury what result to reach are not deemed helpful to the jury

6

and are not admissible under Rule 702. *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (citing Advisory Committee Note to Fed. R. Evid. 704). A court should exclude an expert's testimony if it instructs the jury on the law because that is exclusively the court's role. *United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993).

An expert's opinion on the reasonableness of a police officer's conduct in light of Fourth Amendment standards is a legal conclusion on the ultimate issue of law, not a fact based opinion that will assist the jury. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (citing *Arnott v. Mataya*, 995 F.2d 121, 123-124 (8th Cir. 1993)). The United States Court of Appeals for the Eighth Circuit has held that the ultimate question in excessive force cases is one of law, i.e., once the predicate facts are established, the reasonableness of a police officer's conduct under the circumstances is a question of law. *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) (quoting *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)). Therefore, an expert's opinion in an excessive force case concerning the reasonableness or excessiveness of a police officer's conduct under the Fourth Amendment is an impermissible and inadmissible legal conclusion, not a fact based opinion. *Peterson*, 60 F.3d at 475 (citing *Arnott*, 995 F.2d at 123-124).

And finally, the use of expert testimony on the issue of excessive force is not even necessary or preferred because the question of excessive force is so fact intensive that a jury will often be in as good a position as the expert to decide whether the officer's conduct was objectively reasonable. *United States v.*

*DiSantis*, 565 F.3d 354, 364 (7th Cir. 2009) (quoting *Thompson v. City of Chicago*, 472 F.3d 444, 458 (7th Cir. 2009)).

Based on the foregoing, Mr. Ryan's report is inadmissible. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (citing *Arnott v. Mataya*, 995 F.2d 121, 123-124 (8th Cir. 1993)). There are, however, a surfeit of other reasons why this Court should not admit Mr. Ryan's report into evidence, not least of which is between January 3, 2007 and September 5, 2018, no fewer than six courts barred Mr. Ryan from doing in those cases precisely what he is attempting to do in this case. *Provost v. Crockett County*, No. 1:17-cv-01060-STA-egb, 2018 WL 4224907, at *1 (W.D. Tenn. Sept. 5, 2018); *Murphy v. City of Tulsa*, No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *7 (N.D. Okla. Jan. 18, 2018); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *5 (N.D. Ill. Aug. 19, 2016); *Kaleta v. Johnson*, No. 12-170 (JNE/FLN), 2013 WL 3448148, at *3 n.10 (D. Minn. July 9, 2013); *Wade v. Colaner*, No. 06-3715-FLW, 2010 WL 5479629, at *5 n.6 (D.N.J. Dec. 28, 2010); *Atwood v. Town of Ellington*, 468 F. Supp. 2d 340, 358 (D. Conn. 2007).

In *Provost v. Crockett County*, the United States District Court for the Western District of Tennessee barred Mr. Ryan from testifying "as to legal conclusions on matters of law or legal standards, including '*legal mandates*' and whether something is 'objectively reasonable' under the Constitution or case law [because] whether [the] Defendants' actions were reasonable under the [Fourth]

8

Amendment is the ultimate issue." No. 1:17-cv-01060-STA-egb, 2018 WL 4224907, at *1 (W.D. Tenn. Sept. 5, 2018) (emphasis added).

In *Murphy v. City of Tulsa*, the United States District Court for the Northern District of Oklahoma barred Mr. Ryan from testifying that "the questioning undertaken by [a police officer] was consistent with generally accepted policies, practices, training, *and legal mandates*." No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *7 (N.D. Okla. Jan. 18, 2018) (emphasis in original). The court further found that Mr. Ryan failed to cite "any legal authority upon which he [relied] to support his opinion that [a police officer's] questioning of [the plaintiff] was consistent with *legal mandates*," and barred him from "offering any legal conclusions, including opinions as to whether [a police officer] violated [the plaintiff's] constitutional rights," and barred him from offering an opinion on "whether the City of Tulsa or any of its employees violated *legal mandates*." *Murphy v. City of Tulsa*, No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *7 n.3 (N.D. Okla. Jan. 18, 2018) (citing *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 1730608, at *9 (N.D. Ill. May 2, 2016)) (emphasis added).

In *Sanders v. City of Chicago Heights*, the United States District Court for the Northern District of Illinois barred Mr. Ryan from testifying about whether a party's testimony and confession were credible and described his attempt to do so as "unsupported speculation." No. 13 C 0221, 2016 WL 4417257, at *5 (N.D. Ill. Aug. 19, 2016). The court barred him testifying that "there was probable cause to arrest [the plaintiff]" and "to the legal standards of what constitutes probable

9

cause, including the 'totality of the circumstances' test." *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *6 (N.D. Ill. Aug. 19, 2016) The court devoted an entire section of its opinion to Mr. Ryan's repetitive use of the phrase *legal mandates*, and barred him from testifying about "probable cause" and whether the "Defendants' conduct was consistent with '*legal mandates*.'" *Sanders*, 2016 WL 4417257, at *7.

Finally, the court took Mr. Ryan to task for opining that the corruption within the Chicago Heights Police Department had "no evidentiary connection…in the materials provided to date with the investigation of [the plaintiff]." *Sanders*, 2016 WL 4417257, at *7-8. The court found that Mr. Ryan "knew little about the corruption at the Chicago Heights Police Department at the time [a] murder investigation took place," and "he never [articulated] – at his deposition or in his expert report – how he came to the conclusion that there was 'no evidentiary connection' between the murder investigation implicating [the plaintiff] and the corruption in the Chicago Heights Police Department." *Sanders*, 2016 WL 4417257, at *7-8. Ultimately, the court found Mr. Ryan's opinions about there being no corruption in the Chicago Heights Police Department "useless" and prohibited him from testifying on the subject. *Sanders*, 2016 WL 4417257, at *7-8 (citing *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011) ("Mere conclusions without a 'hint of an inferential process'[ ] are useless to the court.").

In *Kaleta v. Johnson*, the United States District Court for the District of Minnesota "[gave] no weight to Mr. Ryan's opinions regarding the reasonableness of the [police] officers' actions" because this was a matter of law for the court to decide, and it also "gave no weight to Mr. Ryan's statements as to what was depicted in [ ] videos and stated during depositions" because his testimony about those matters "would not be of assistance to the fact-finder." No. 12-170 (JNE/FLN), 2013 WL 3448148, at *3 n. 10 (D. Minn. July 9, 2013).

In *Wade v. Colaner*, the United States District Court for the District of New Jersey took issue with Mr. Ryan's credibility as an expert witness and said the following regarding his testimony about police procedures and the use of force during an arrest:

> …Ryan opined that Colaner's use of force was consistent with standard police procedures. Notably, on cross, *contrary to the depictions of the video*, Ryan testified that Wade was non-complaint throughout the incident; that instead of moving his right arm behind his back, Wade moved his arm away from Colaner; that instead of striking Wade with his fist, Colaner struck Wade with his forearm; and that although Wade only offered minimal resistance, Colaner was justified in using force because Wade had a gun strapped to his ankle.

No. 06-3715-FLW, 2010 WL 5479629, at *5 n.6 (D.N.J. Dec. 28, 2010) (emphasis added).

In *Atwood v. Town of Ellington*, the United States District Court for the District of Connecticut barred Mr. Ryan from testifying about a supervisor's duty with respect to an offending officer because the court found that his "generalized causation opinion that [the] defendant 'had a supervisory obligation at the outset

11

that had a nexus to what ultimately occurred in this case,' [lacked] the substance or specificity to satisfy [the] affirmative proximate causation evidentiary requirement." 468 F. Supp. 2d 340, 358 (D. Conn. 2007). The court found Mr. Ryan's opinions on this particular issue to be so speculative that it granted summary judgment on this issue against his client. *Atwood*, 468 F. Supp. 2d at 358.

Mr. Ryan has a pattern and practice of parachuting in to police excessive force cases to tell courts and juries what the law is and that officers complied with the law and did nothing wrong, and courts keeping rejecting his repeated attempts to do these very things. *See, e.g., Provost v. Crockett County*, No. 1:17-cv-01060-STA-egb, 2018 WL 4224907, at *1 (W.D. Tenn. Sept. 5, 2018); *Murphy v. City of Tulsa*, No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *7 (N.D. Okla. Jan. 18, 2018); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *5 (N.D. Ill. Aug. 19, 2016); *Kaleta v. Johnson*, No. 12-170 (JNE/FLN), 2013 WL 3448148, at *3 n.10 (D. Minn. July 9, 2013); *Wade v. Colaner*, No. 06-3715-FLW, 2010 WL 5479629, at *5 n.6 (D.N.J. Dec. 28, 2010); *Atwood v. Town of Ellington*, 468 F. Supp. 2d 340, 358 (D. Conn. 2007).

One would think he would learn from his past mistakes and stop repeating them, but when it comes to Mr. Ryan, one would be wrong, as a careful analysis of the report he produced for this case amply demonstrates.

At least three courts[3] have barred him from attempting to tell juries what "legal mandates" are or that law enforcement officers, agencies, or both complied with them, yet the report he produced in this case does the very same thing *eight times*. (Ex. A, ¶¶ 7, 65, 68, 71, 72, 74, 77, 81). Like the courts in the Western District of Tennessee, the Northern District of Oklahoma, and the Northern District of Illinois, this Court should bar Mr. Ryan's from telling it or a jury what "legal mandates" are or that Officer Hawkins, the Shannon Hills Police Department ("SHPD"), or both complied with them. *Provost v. Crockett County*, No. 1:17-cv-01060-STA-egb, 2018 WL 4224907, at *1 (W.D. Tenn. Sept. 5, 2018); *Murphy v. City of Tulsa*, No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *7 (N.D. Okla. Jan. 18, 2018); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *7 (N.D. Ill. Aug. 19, 2016). Based on the foregoing, the Court should reject Paragraphs 7, 65, 68, 71, 72, 74, 77, and 81 of Mr. Ryan's report and should bar him from testifying about anything mentioned in those paragraphs. (Ex. A, ¶¶ 7, 65, 68, 71, 72, 74, 77, 81).

This Court should bar Mr. Ryan from offering an opinion on whether any person's testimony is credible or truthful, and it should bar him from opining on what is depicted in any video evidence or what someone said in a deposition. *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *5 (N.D.

---

[3] *Provost v. Crockett County*, No. 1:17-cv-01060-STA-egb, 2018 WL 4224907, at *1 (W.D. Tenn. Sept. 5, 2018); *Murphy v. City of Tulsa*, No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *7 (N.D. Okla. Jan. 18, 2018); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *7 (N.D. Ill. Aug. 19, 2016).

Ill. Aug. 19, 2016) (barring Mr. Ryan from testifying about whether a witness's testimony and confession were credible or truthful); *Kaleta v. Johnson*, No. 12-170 (JNE/FLN), 2013 WL 3448148, at *3 n.10 (D. Minn. July 9, 2013) (barring Mr. Ryan from testifying about the reasonableness of police officers' actions and barring him from testifying about what was depicted in video evidence and what witnesses said during depositions); *Wade v. Colaner*, No. 06-3715-FLW, 2010 WL 5479629, at *5 n.6 (D.N.J. Dec. 28, 2010) (chiding Mr. Ryan for testifying contrary to what was depicted in video evidence). Based on the foregoing, the Court should reject Paragraphs 55 through 63 of Mr. Ryan's report and should bar him from testifying about anything mentioned in those paragraphs. (Ex. A, ¶¶ 55-63).

The Court should bar Mr. Ryan from offering an opinion on what a "reasonable and well trained officer would conclude based on the totality of the circumstances" or based on anything else. *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *5 (N.D. Ill. Aug. 19, 2016) (barring Mr. Ryan from testifying that "there was probable cause to arrest [the plaintiff]" and "to the legal standards of what constitutes probable cause, including the 'totality of the circumstances' test."). Based on the foregoing, the Court should reject Paragraphs 67 through 81 of Mr. Ryan's report and should bar him from testifying about anything mentioned in those paragraphs. (Ex. A, ¶¶ 67-81).

In Paragraph 84 of Mr. Ryan's report, he says, "I would also note that while the complaint alleges deficiencies on the part of the City of Shannon Hills, *I found no evidence in the materials provided to date to support such an allegation*." (Ex.

A, ¶ 84) (emphasis added). In *Sanders v. City of Chicago Heights*, he said nearly the identical thing about an allegation of corruption in the Chicago Heights Police Department. No. 13 C 0221, 2016 WL 4417257, at *7-8 (N.D. Ill. Aug. 19, 2016) ("…corruption within the Chicago Heights Police Department has '*no evidentiary connection made in the materials provided to date* with the investigation of [the plaintiff.]'") (emphasis added). *Sanders* found that Mr. Ryan "knew little about the corruption at the Chicago Heights Police Department at the time [a] murder investigation took place," and "he never [articulated] – at his deposition or in his expert report – how he came to the conclusion that there was 'no evidentiary connection' between the murder investigation implicating [the plaintiff] and the corruption in the Chicago Heights Police Department." *Sanders*, 2016 WL 4417257, at *7-8.

Ultimately, the court found Mr. Ryan's opinions about there being no corruption in the Chicago Heights Police Department "useless" and prohibited him from testifying on the subject. *Sanders*, 2016 WL 4417257, at *7-8 (citing *Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011)) ("Mere conclusions without a 'hint of an inferential process'[ ] are useless to the court."). Based on the foregoing, the Court should reject Paragraph 84 of Mr. Ryan's report and should bar him from testifying about anything mentioned in that paragraph. (Ex. A, ¶ 84).

On July 29, 2019, Mr. Banks took Mr. Ryan's deposition.[4] (Ex. B, at 1). That deposition revealed that Mr. Ryan is not the expert he holds himself out to be. He has a law degree and a law license and touts both to buttress his alleged expertise, yet he has no meaningful experience as a lawyer. (Ex. B, at 14-15, 161-162). For example, he has handled only one case as a lawyer, and that was in 1995. (Ex. B, at 14-15). He has never argued a case before a federal or state appellate court; he has never written an appellate brief; he has never tried a case before a jury; he has never taken a deposition; he has never litigated a case in a United States district court, a United States circuit court, or the Supreme Court of the United States; and he has never litigated a case in the court of final jurisdiction of his home state of Rhode Island. (Ex. B, at 17-18, 161-162). He admitted that given his paucity of experience as a lawyer, he cannot be considered a practicing lawyer. (Ex. B, at 161-162). In sum, the fact that he has a law degree and a law license do nothing to buttress his alleged expertise.

He holds himself out as an expert who can train law enforcement officers and departments on what "legal mandates" are, yet when asked, he could not summarize the holding of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* or explain its analysis or reasoning, and he has never read *Kumho Tire Co., Ltd. v. Carmichael.* (Dep. of J. Ryan, at 18-20). One cannot help but wonder how it is that a person

---

[4] Excerpts of Mr. Ryan's deposition are attached at Exhibit B. The excerpts are stamped "Ex. B - Dep. of J. Ryan XXXXX." The page numbers cited in this motion are to the actual page numbers of Mr. Ryan's deposition, which are located in the upper right of the excerpt pages, not to the stamped page numbers, which are located in the bottom center of the excerpt pages.

who purports to be an expert in constitutional tort cases cannot summarize the holding of *Daubert*, which is a landmark case on expert testimony in federal courts, cannot explain its reasoning or analysis, and has never read *Kumho*, which is just as important a case. Frankly, such a person is no expert at all.

His ignorance about *Daubert* and *Kumho* are not his only deficiencies; he is also not conversant with Rule 702 of the Federal Rules of Evidence. (Ex. B, at 26). Thus, it is no wonder that he continues to proffer reports in case after case, including this one,[5] that courts have rejected in prior cases. *See, e.g., Provost v. Crockett County*, No. 1:17-cv-01060-STA-egb, 2018 WL 4224907, at *1 (W.D. Tenn. Sept. 5, 2018); *Murphy v. City of Tulsa*, No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *7 (N.D. Okla. Jan. 18, 2018); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *5 (N.D. Ill. Aug. 19, 2016); *Kaleta v. Johnson*, No. 12-170 (JNE/FLN), 2013 WL 3448148, at *3 n.10 (D. Minn. July 9, 2013); *Wade v. Colaner*, No. 06-3715-FLW, 2010 WL 5479629, at *5 n.6 (D.N.J. Dec. 28, 2010); *Atwood v. Town of Ellington*, 468 F. Supp. 2d 340, 358 (D. Conn. 2007).

Officer Hawkins and the SHPD paid Mr. Ryan $6,000 to testify in this case. (Ex. B, at 166-167). He earns "a little over $400,000" annually doing for other law enforcements officers and agencies what he is doing for Officer Hawkins

---

[5] In his deposition, he did admit that he could not offer an opinion "with respect to what the legal mandate is," and he did admit that a jury does not need him to tell it what the law is, or what is objectively reasonable with the meaning of the Fourth Amendment, or whether an exigent circumstance existed in a particular case. (Ex. B, at 31, 151).

and the SHPD in this case. (Ex. B, at 166-167). That is more than three times what he earned annually in his prior career as a law enforcement officer. (Ex. B, at 166-167). The proffered testimony of paid experts should be viewed with a high degree of skepticism because in nearly every instance, a party selects a paid expert "…on the basis of the convergence of [his] views with the litigating position of the client, or [his] willingness to fall in with the views urged upon [him] by the client." *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 633 (7th Cir. 2010) (Posner, J., concurring). This aptly describes Mr. Ryan. He left his job as a law enforcement officer earning $110,000 annually to earn over $400,000 annually as a paid mouthpiece for law enforcement in police misconduct cases. (Ex. B, at 166). And he earns his hefty compensation by "…[falling] in with the views urged upon [him] by [his clients]." *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d at 633 (Posner, J., concurring).

Neither Mr. Ryan's report nor what he proposes to testify to as an ostensible expert satisfies the requirements of Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* or *Kumho Tire Co., Ltd. v. Carmichael*, therefore, the Court should exclude his report from evidence and bar him from testifying as an expert. *Provost v. Crockett County*, No. 1:17-cv-01060-STA-egb, 2018 WL 4224907, at *1 (W.D. Tenn. Sept. 5, 2018); *Murphy v. City of Tulsa*, No. 15-CV-528-GKF-FHM, 2018 WL 468286, at *7 (N.D. Okla. Jan. 18, 2018); *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 4417257, at *5 (N.D. Ill. Aug. 19, 2016); *Kaleta v. Johnson*, No. 12-170 (JNE/FLN), 2013 WL 3448148, at *3 n.10 (D.

Minn. July 9, 2013); *Wade v. Colaner*, No. 06-3715-FLW, 2010 WL 5479629, at *5 n.6 (D.N.J. Dec. 28, 2010); *Atwood v. Town of Ellington*, 468 F. Supp. 2d 340, 358 (D. Conn. 2007).

                                      Respectfully submitted,

                                      John W. Walker, Sr.
                                      Ark. Sup. Ct. Reg. No. 64046
                                      Attorney for the Plaintiff, Johnny Banks
                                      John W. Walker, P.A.
                                      1723 Broadway Street
                                      Little Rock, Arkansas 72206-1220
                                      Telephone 501.374.3758
                                      Email johnwalkeratty@aol.com